Cushing, J.
This action, which is debt on a bond, conditioned to perform an award, comes before us on exceptions to the ruling of the court of common pleas.
The case finds that the plaintiff, Noah L. Strong, and the defendant, Phineas Strong, father of the plaintiff, occupied for many years, adjoining farms in Southampton, in this county, under a common management; that the two farms were stocked and worked, and the products taken and appropriated by the parties without any definite agreement as to the share of each ; that in the year 1846, the defendant conveyed to the plaintiff an undivided half of a saw-mill and a grist-mill; that the defendant took the principal management of the gristmill, and the plaintiff that of the saw-mill; that they generally shared in the earnings of said mills, but in what proportion did not appear; that each party took notes of his mill customers payable to himself; that two small books were kept at the saw-mill, containing amounts or memoranda of sawing, in one of which were entered charges against customers, some of which remained outstanding and unsettled at the time if the arbitration.
*562 In this relation of the parties and of their business, differ-enees arose, to adjust which, in the year 1849, mutual bonds, with similar conditions, were entered into, which bonds, after' reciting that Noah L. Strong claims of Phineas Strong, payment for services rendered by Noah to Phineas, and of sundry sums of money paid, laid out and expended by Noah for the benefit of Phineas, Phineas claiming as against Noah that the demands of the latter had been satisfied by the conveyance of real estate to him, and also alleging an equitable claim to reimbursement of a part of the value of the real estate conveyed, then proceed to stipulate that the said differences between the parties, and all other demands which either has against the other, are submitted to the award and arbitration of Asahel Burge, Heman Searl, Luther Edwards, ■ Strong Clark, and Alvan Bates, arbitrators, indifferently chosen by and between the parties, with covenant to abide by and perform the award of said arbitrators.
The arbitrators made their award in the same year to the following effect
First, they require the defendant to pay to the plaintiff the sum of fourteen hundred dollars in one year, with interest.
Secondly, they award that the grain of all kinds which has been grown or taken on or from the farms of the parties, shall be equally divided between them, and that the grain now sown or growing on said farms shall be equally divided between them at the time of harvesting the same. Also, that the farming tools and implements, including carts, and wagons; shall be equally divided between them. Also, that the parties each shall hold the hay which is on their respective farms. Also, that each party hold the stock of cattle, horses and other animals, which they now claim or call their own, excepting one yoke of bulls, which shall belong to the said Phineas. Also, that the logs now lying in the mill-yard shall be equally divided between the parties. Also, that all debts due and owing from the said parties or either of them, contracted in the period since a certain date mentioned, to the present date, shall be paid equally between them. Also, that all debts due to the said parties standing upon their books of accounts, *563 called the mill-book, charged during said period, shall belong to them in equal shares.
The present action is for the money payment in the award.
Of the five specifications of defence filed in the case, four consisted of assumed matters of ambiguity, uncertainty or defect, alleged to be either apparent upon the face of the award, or susceptible of being lawfully shown by parol evidence, as follows:—
1. That the arbitrators had not decided all the matters in difference, submitted to them.
2. That they had decided concerning matters not within the submission.
3. That the award is not sufficiently certain in specifying the rights and liabilities of the parties and the property which is to be affected thereby.
4. That the award is not in effect final.
At the trial it was ruled that the award is not invalid or void on account of any of these matters, and we are all of the same opinion.
We think the award, on the face of it, has the requisite conditions of competency of matter, certainty and finality, according to the principles of law as settled in other adjudicated cases.
In the first place, there is a specific award in relation to the main object of controversy, namely, the demands of the plaintiff for services and for money expended, and, by operation of law, of the demand of the defendant for reimbursement of a balance alleged on the conveyance of land.
As to this portion of the award, it was argued under the. first specification of defence, that the award does not cover the demand for reimbursement, because that reimbursement, though expressly mentioned in the submission, is not expressly mentioned in the award; but we think that, in a submission of all demands, where money is claimed on either or both sides, an award between the parties of a balance to be paid by either, is a conclusion of the matter in controversy, without a detailed account or other statement of those matters; Leavitt v. Comer, 5 Cush. 129; Shirley v. Shattuck, 4 Cush. 470 *564 Houston v. Pollard, 9 Met. 164; or to apply the language of the court in the case of Bigelow v. Maynard, 4 Cush. 317, the arbitrators, in finding the balance due to a party, do also necessarily find what deduction, if any, should be made for his claim, as certainly as if they had in express terms stated the sum which they deducted.
In this case, the arbitrators, in deciding that a balance was due to the plaintiff, in effect disposed of all money-claims of the defendant, and of course of the particular claim for reimbursement of money on account of the conveyance of land.
Where a submission is in the most general form, of all demands and controversies whatever, and there is an award of a certain sum of money as a balance due from the defendant to the plaintiff, it may well be taken as a full execution of the submission.
And, by parity of reasoning, if under a particular submission, accompanied with a general submission, certain specific things be awarded, and also payment of a certain sum of money, the money payment will be intended to cover all other demands unless the contrary appear. For the present is not the case of an action pending and all matters in difference referred, and an award to pay a sum of money without disposing of the action, which was properly held to be bad. See Billing’s Law of Awards, 128-132. Here the award is perfectly susceptible of being so construed as to dispose completely of all the matters of difference whatsoever; especially if we bear in mind the rule that, according to the modern doctrine, every reasonable intendment is to be made in favor of an award, and it is sufficient to have it appear in the award with reasonable certainty what the rights of the parties are, so as to prevent future controversy and litigation for the ascertainment of those rights.
It was also argued, under the same specification, that, it being shown by parol that the subject of the notes heretofore spoken of was submitted for consideration by the parties at the hearing before the arbitrators, and the notes not being specially mentioned in the award, it is defective in that respect. But as the notes, held by either party, were on the face of *565 them payable to such party, and his property, unless by proof or award the contrary were shown, to abstain from all mention of them in the award, may well be construed as having the legal effect of leaving them as they previously stood, namely, the property of him in whose possession they might be.
Besides, the general consideration already stated, that courts will make no intendment for the purpose of overturning an award, applies here. It will be intended that arbitrators have decided all matters submitted to them, unless the contrary appears; and it is incumbent on the party who seeks to impeach an award, on the ground that it does not decide all the matters submitted, to show this. Tallman v. Tallman, 5 Cush. 325. Here, also, as in the case cited, all intendment to the contrary is precluded by the finding in the ease, that the present arbitrators did in fact consider and intend to decide, and did decide so much of the depending difference between the parties as related to the notes; and the actual objection taken, as recognized in the agreement of counsel, is, not that the question of the notes was not decided by the arbitrators in fact, but that, in their award, they have not specially awarded thereon. We think the true and only question here is, whether the subject of the notes having been submitted to the arbitrators, it was actually decided by them, and whether the terms of the award will admit of such construction as to comprehend that decision. We think the award, considered as a whole, and in its due relation to the submission, is comprehensive enough to cover and conclude this particular subject-matter.
In the second place, in regard to other matters of common interest, the award proceeds to make partition of certain debts, credits and effects, between them in equal shares, as upon a dissolution of copartnership.
The second, third, and fourth specifications of defence apply to this part of the award.
Under the second specification, it is argued that the award goes beyond the submission, in providing for the payment of all debts due or owing from the said parties or either of them during a certain period; whereas it is found, among other things in the case proved by parol, that the arbitrators were *566 called to pass upon no matters except those in which the parties were jointly interested. But non constat that all the debts, owing from either party, were not shown before the arbitrators, by admission or other satisfactory evidence, to be matters of joint interest. Such proof would have been quite in consonance with what otherwise appears of the business relations of the parties.
In the case of Shearer v. Handy, 22 Pick. 417, which m some points resembles the present one, there was an agreement between mother and son, “ to refer all their unsettled accounts ” to three arbitrators, who awarded that the son should pay all the debts, and receive from the'mother $250, and half of their farm stock; the award was held to be not binding, because it manifestly exceeded the terms of the submission. Here the submission was of all depending differences, and the award is relieved from any objection of want of power in the arbitrators.
Under the third and fourth specifications, it is argued that the award is bad, for uncertainty in this point, and for defective determination of the rights and property awarded; and that the award is not final, as it leaves undivided, in fact, things which it purports to divide. But, in regard to all these points, we think the award is maintainable, as definitely prescribing a rule, by which the partnership property is to be divided; namely, that as to the cattle, excepting one pair specially transferred, they shall continue and remain the separate property of each, according to their previously understood ownership and possession ; and that certain other chattels, together with debts and book credits, shall be divided and assigned equally between the parties.
It is true, the arbitrators do not themselves actually sever the things to be divided, whether hay, grain, utensils or logs There is nothing in the submission which requires them to effect such actual severance and manual distribution of these things. They adjudge and award that the things shall be divided, and they decide in what proportions. In many cases, no more is possible to be done; as of an award for the division of partnership effects, which may happen at the time to be *567 abroad, or otherwise not in the personal possession of either party, and of which the quantity or value is not known; or, as in the case of an award concerning objects, not in their nature presently divisible, but hereafter susceptible of division, such as the yet immature crop of a fruit tree; or, as in the case of joint interests not in their nature capable at any time of material severance, like the property in a ship. All these, and many other examples which readily suggest themselves, would seem to show that an award, which purports to divide property between two persons, by prescribing a rule of division, may well be final, though the property in question be not actually divided, nay, though it be incapable of actual division. If the award give a definite and certain rule for the division, there is no want of power in the laws to apply the rule and enforce its application.
Though possible doubt may attach to the doctrine, by reason of dicta in some late English cases, (see the cases collected in Billing on Awards, pp. 135, 136, note e,) yet, on the whole, it is admitted in those very cases, that if the arbitrator makes “some regulations upon the matters of difference,” to use the words of baron Parke, or “ gives direction ” as to what is to be done, according to the language of lord Abinger, it is decisive in favor of the award. An award is final when it is an absolute conclusive adjudication of the matters in dispute. Karthaus v. Ferrer, 1 Peters, 230.
When it is laid down as a principle of law that an award should be final, the meaning is, not that nothing shall remain to be done to complete the execution of the award, but that the thing to be done shall have been determined and defined to a reasonable certainty. Thus, an award is bad which requires A to give bonds to B, with such sureties as B shall approve, because that commits every thing to the discretion of B. Com. Dig. Arb. E. 15. But an award that the property of a pump is in A, and that B has a right to use it, and that it shall be repaired at their joint expense, has been adjudged to be final. Boodle v. Davies, 3 Ad. & El. 200. Yet in this last-named case many things remained to be done to give effectual execution to the award, about which things it was *568 quite possible for litigation to arise. But the respective rights of the parties being determined by the award, it is-to be taken as valid, for the law furnishes the appropriate remedies for the enforcement of those rights.
Indeed, in all this second part of the award before us, to which the second, third, and fourth’ specifications of defence apply, it may be easy to imagine how a greater degree of precision might have been attained by the arbitrators in expressing their will; and if it were the ease of an award subject to recommitment, we might look at it with a more critical' eye; but we are not prepared to say that’, in these particulars, the award is not final, or is so indefinite and uncertain as to be incapable of execution, and, therefore, absolutely void. And the general view which we take of this case relieves us from the necessity of inquiring into the questions of admissibility of evidence raised on this part of the record.
But we cannot so readily dispose of the fifth specification, which alleges that Luther Edwards, one of the arbitrators, was not a disinterested person, and had, in making the award, conducted himself with partiality to the plaintiff.
This specification involves the question, of how far the validity of an award is affected by sentiments or acts of partiality on the part of an arbitrator; and also the question upon the facts and arguments in the present case, in what manner, if such partiality be alleged, it shall be proved.
It seems to be thoroughly settled in this commonwealth as well as in England, in accordance with the doctrine of the civil law and of natural justice, that corruption or fraud, si quid dolo in ea re factum sit, if lawfully shown, will set aside an award ; and in this commonwealth it is a good defence to a suit on the award.
Thus, in the case of Brown v. Bellows, 4 Pick. 179, this court has declared that an award may be set aside for fraud, clear mistake, or corruption; or, as it is otherwise stated in the same ease, if there be proof of fraud, corruption, or misbehavior of the arbitrators.
Tn the case of Bean v. Farnham, 6 Pick. 269, the invalidity *569 of an award, by reason of misbehavior of the arbitrators, is recognized, and the court indicate the nature of the remedy under the common law of this commonwealth, Dane’s Abr. ch. xiii. art. 4; according to which, differing in this respect from the English common law, corruption of the arbitrators, excess of authority, or gross errors and mistakes in the award, are pleadable in defence to an action on the award; which innovation in pleading grew out of our courts not possessing the full powers of courts of chancery in England.
In the case of The Boston Water Power Co. v. Gray, 6 Met. 131, the court define the conditions of law or fact, in which the court will set aside an award upon matters not arising out of the submission or award, to be when there “ is some corruption, partiality, or misconduct on the part of the arbitrators, or some fraud or imposition on the part of the party attempting to set up the award, by means of which the arbitrators were deceived or misled;” and an award may undoubtedly be impeached and avoided by proof of fraud,'provided it be fraud practised upon or by the referees.
In the later case of Withington v. Warren, 10 Met. 431, where an award was sustained, although proof was offered that one of the arbitrators had, upon the statement of the chairman that it was right, signed the award without reading it, or knowing its contents; yet it was admitted, that if it could have been shown that the arbitrator was induced by some false representation, fraud, or misconduct, to sign a different award from that which he intended, this would have been fatal. Without multiplying authors on this point, it suffices to refer to the carefully expressed instructions of the judge (Chief Justice Shaw) to the jury in the case of The Boston Water Power Co. v. Gray, and the decision of the whole court thereon, to establish the position that corruption, fraud, or misconduct is decisive against an award.
If, therefore, in the present case, fraud and corruption were distinctly alleged or plainly appeared on the face of the proofs, there would be no room for question or doubt as to the matters to be decided by this court.
But nearly all the authorities cited speak also of misconduct *570 or misbehavior of the arbitrator, as invalidating an award. And, if so, can there be any grave cause of doubt when the thing alleged is undue influence of a party attempted or exercised, upon one or more of the arbitrators, especially if the arbitrator or arbitrators yield to that influence ? Is not that rightly to be deemed misconduct or misbehavior on the part of an arbitrator? We cannot but think so. We have no hesitation in expressing our opinion of the impropriety and unfitness, to say the least, of any ex parte representations being received by an arbitrator, during an arbitration, from either of the parties to the controversy.
To judge of the true bearings of the fact, it is only necessary to reflect on the relation and character of arbitrators. Like jurors impanelled for the trial of a cause, or judges on the bench, they are invested, pro hac vice, with judicial functions, the rightful discharge of which calls for and presupposes the most absolute impartiality. And a judge, a juror, an arbitrator, a commissioner of partition, should not only possess the quality of impartiality in fact, and have the conscience of it in the given case, he should, moreover, sedulously shun all the possibilities even of insensible bias. Nor is it enough, for any person thus appointed to decide the conflicting rights of others, to be animated with the purpose of conscientious decision, and to decide, in fact, according to the law and the truth of the ease. A judge ought to place and keep himself beyond the suspicion of dishonorable influences. Though his judgment of the pending controversy be altogether a just one, yet he is false to his duty if he expose his mind to the chance or danger of perversion. It was held, and rightfully so, to be no defence or justification of the conduct of a judge, who was in many respects the greatest and wisest man of his day, Sir Francis Bacon, that his decision was adverse to the party from whom he received a gift, bestowed for the purpose of conciliating his favor. 2 Camp. Lives of the Lord Ch. 2d Am. ed. 336. For the moral influence of judicial decisions is to be guarded, as well as the rightfulness of the judgment in the given case. And although an arbitrator has only special, and often very limited and narrow duties, and is not *571 assumed to possess all the general conditions of a judge, and is not under oath like a juror, yet the analogy of his duties remains the same as if he were appointed by the highest public authority, or sworn to impartiality of judgment. Coni-promissum ad similitudinem, judiciomm redigitur, says the Digest. In accordance with which it is that the law gives to an arbitrator some of the immunities of a judge. Thus, it protects him, in general, from question as to the grounds of his judgment; 1 Greenl. Ev. § 249; and from personal responsibility for errors which he may honestly commit. Billing’s Law of Awards, pp. 103, 104.
In a word, the duties of an arbitrator being quasi judicial, his judgment, and his deportment in the powers of judgment, are to be considered and tested by the criteria of impartiality, which apply to the general subject-matter, and which the first principles of rational justice dictate and prescribe.
There is nothing singular in the conclusion here suggested, of influences in themselves undue, but altogether short of corruption, being so applied to the mind of another as to impair the validity of an act otherwise lawful. The question, which sometimes arises upon contested wills, is an obvious and pertinent illustration of the general idea. 1 Jarman on Wills, by Perkins, c. 3.
This obvious legal conclusion of this doctrine has not been affirmed as yet by any decision of this court, nor has the contrary been adjudged; hence it may be assumed as an open question. But it seems to be well settled in England, whether at common law or in equity.
The St. of 9 & 10 Wm. 3, c. 15, which authorizes submission to arbitration to be made by rule of court, provides for setting an award aside when it shall appear that the arbitrators “ misbehaved themselves,” and that the award “ was procured by corruption or undue means,” or, as it is otherwise described in the act, “ by corruption or undue practice.” Bac. Abr. Artí. B.
The provisions of this act are special ones; and the power to set aside an award under it can be exercised only in the case of a rule of court, and it would seem only by the court *572 granting the rule. 2 Story, Eq. Jur. § 1450, note; § 1452, note.
And, at common law, fraud, partiality, misconduct, is not pleadable to an action on an award. Kyd on Awards, ch. 7, p. 227. But these peculiarities of jurisdiction do not affect the question of principle as to what is misbehavior on the part of arbitrators.
Lord Hardwicke set aside an award in an early case, as being unfairly obtained. Ives v. Medcalfe, 1 Atk. 64. See also Burton v. Knight, 2 Vern. 514.
Lord Thurlow, in a subsequent case, said that an arbitrator should be indifferent; for, by considering himself as the agent of the person appointing him, he acts against good faith and breaks a most solemn engagement. Calcraft v. Roebuck, 1 Ves. Jr. 227.
The leading modern case is that of Walker v. Frobisher, decided by Lord Eldon, 6 Ves. 70; to the effect, that if an arbitrator receive any evidence ex parte and irregularly, it is against general principles, and is fatal to the award.
In so deciding, Lord Eldon did but follow an already strong set of legal opinions. The greater prevalence of arbitration in modern times, while it has led the courts to adopt more liberality of construction regarding defects of mere form or honest errors, (see Peters v. Peirce, 8 Mass. 398,) has, at the same time, been followed by more strictness of judgment as to the character and conduct of arbitrators in the relation of impartiality and integrity, both in the equity and the common law tribunals.
The doctrine in the case of Walker v. Frobisher, was after-wards affirmed by Lord Eldon himself in Featherstone v. Cooper, 9 Ves. 67, in which case he says, that arbitrators must understand “that they are acting corruptly, acting as agents; and that their award ought to be set aside, where they take instructions or talk with one party in the absence of the other.” The same doctrine has been recognized as a sound principle by the courts of common law in England. Thus, if an arbitrator examine one of the parties or his witnesses, without notice to the opposite party, the award will *573 be set aside. In re Hick, 8 Taunt. 694. So where an arbitrator questions a witness, and receives statements from him in the absence and without the consent of one party to the reference. Dobson v. Groves, 6 Adol. & El. N. S. 637. So, when the arbitrators, by agreement together, examined a witness each separately from the other, and in the absence of the parties, the court held the course pursued to be contrary to natural justice, and to vitiate the award. In re Plews, 6 Adol. & El. N. S. 845. In these cases the rule of impartiality, of exact justice, and of punctilious adherence to all its requisitions, is laid down as the law to guide the conduct of arbitrators.
And though, therefore, arbitrators be nominated, one by each party, still, they are not to consider themselves as representing separate parties, and the advocates of opposite sides ; but as called on to execute a joint trust, and to look impartially, at the true merits of the matter submitted to their judgment. Caldwell on Arbitration, p. 51.
In this commonwealth, with a jurisprudence emphatically eclectic in its character, drawing both rights and remedies almost indifferently from either common law or equity, as the interests of justice may require, it has been held theoretically that arbitrators ought to be indifferent and impartial, both in sentiment and in action. Fox v. Hazleton, 10 Pick. 275.
If, indeed, parties in controversy choose to waive the right of impartial trial, and purposely and avowedly select as arbitrators persons having formed opinions on the subject-matter, or known to have partialities for and against the respective parties, the court, without commending, will not set aside the award, merely because of the character of the arbitrators. But if parties really intend to have their rights decided by impartial judges, they are entitled to insist that each and all of them be impartial. Therefore, proof of bias and strong partiality on the part of an arbitrator, would form a serious objection to the acceptance of an award. It would be no valid answer to the objection, that such referee did not discover undue partiality in.the deliberations of the referees, and made no unusual exertion to influence their minds, because it *574 is impossible to determine to what extent their judgment might have reposed on his reasonings and suggestions, or how far their decisions were influenced by him.
Such is the deliberate opinion of this court as expressed in the case of Fox v. Hazleton, 10 Pick. 275. It remains only, as the natural complement of this opinion, to decide that arbitrators appointed indifferently as impartial men, shall, in the true spirit of impartiality, hold themselves beyond the improper interference of either party, or undue influence from any quarter.
We are the more disposed to state unequivocally the conclusions to which we have arrived on the whole matter, for the reason that, as the case itself suggests the irregular interference by a party, and the consequent exercise of influence by him over the mind of an arbitrator, with or without actual prejudice to the rights or interests of the other party, — under these circumstances, not to condemn in principle such interference, and such exercise oi influence, would be impliedly to sanction it, and to leave it to the indirect sanction of this court. If any such interposition has been practised in arbi-trations heretofore, under impression, on the part either of arbitrators or of litigants, that such interposition is not wrong, it is time this impression should be corrected, and sounder notions of right be communicated to the public mind. It is not to be permitted that so much as the shadow of a spot shall tarnish the unsullied purity of the justice of this commonwealth.
We conclude, therefore, that not corruption or fraud only in an arbitration, but also the exercise of undue or improper influence, applied by one of the parties to one or more of the arbitrators, by separate conference, or other ways of approach, is a lawful defence to an action on the award; and applying this conclusion of law and the doctrine it embraces, to the case before us, we feel constrained to order a new trial upon the single issue of the matters embraced in the fifth specification of defence, which, in our judgment, is a fit question for the consideration of the jury.
But, as the record shows that a verdict was taken in the *575 court below on one point, namely, the alleged assent-of the defendant to the award, and as our opinion disposes of all the other questions in the case, a new trial is granted upon the condition only, that the defendant will take no exception to the award, save on the single question presented by the fifth specification; and, as well to prevent mistakes on this point as for other sufficient reasons, the new trial will be had in this court.
Objection was taken below, on the assumption that the refusal of the plaintiff to allow the defendant after the making of the award, and before action brought, to inspect or take the mill-books, is pleadable in law to this action; but we think it was rightly ruled by the court of common pleas, that the defendant’s remedy for such alleged refusal is upon his bond.
We do not propose, in the present position of the case, to go into or even touch the evidence adduced, bearing on the question of the imputed partiality of Edwards. That is the very inquiry upon which the jury is to pass, and as to which we have not formed, and of course do not express, any opinion.
The case finds, however, that Edwards himself, the arbitrator, whose partiality is impeached, and two other witnesses., Phineas Strong, Jr., and Lyman Strong, were called to give evidence on that part of the subject; and we think it necessary to say we do not readily perceive how the evidence of Phineas Strong, Jr., and Lyman Strong, came to be competent. They testify to post litem declarations of Edwards, one of the arbitrators. Is not this, in any view of it, as between the plaintiff’ and defendant, hearsay evidence ? If the question were of an action of any sort against Edwards himself, provided any such be possible, as for instance in the analogous case of the impeachment of a judge, we conceive that his declarations, admitting improper influences in the decision of a case, would be evidence, whenever and wherever uttered by him. There may possibly be proceedings in equity, in which this evidence would be admitted in such a relation as the present. But we cannot think it competent in this *576 case, according to any rule of proceeding or evidence at common law.
C. Delano, for the defendant.
C. P. Hwntington, for the plaintiff.
Indeed, on a first view of the subject, we entertained some doubts of the admissibility of the testimony of Edwards himself. But the admission of such evidence seems to be required by the necessities of justice. It is received without challenge, (see in re Iiick, 8 Taunt. 694,) in the English courts. And though the general doctrine be that an arbitrator cannot be suffered to impeach his own award, Bigelow v. Maynard, 4 Cush. 317; especially by declarations in pais, yet, in cases like the present, this court, in sittings at Nisi Prius, has admitted the arbitrators to depose to facts, which transpired at or during the arbitration, tending to show the award to be void for legal cause, (see Boston Water Power Co. v. Gray, 6 Met. 131, cor. Shaw, Ch. J.; Winsor v. Griggs, 5 Cush. 210, cor. Bigelow, J.;) and we think it was correctly done. 2 Greenl. Ev. § 78.
Exceptions sustained; new trial in this court.