Fremont-Smith, J.
In this convoluted case, the parties had entered into an Agreement to engage in a joint venture for the ownership and operation of a television broadcasting tower in East Freetown, Massachusetts. The Agreement contemplated that the plaintiff would provide capital and assets, whereas the defendant was to provide a TV tower structure, a $200,000 line of credit to plaintiff, and other assets. The Agreement also provided that the joint venture “presupposed a following set of By-laws and Articles of Organization.”
These latter documents were drafted by plaintiffs then attorney, William Tuttle, in August 1991 and supplied to defendant. It is undisputed that these corporate documents contained provisions which were inconsistent with the Agreement’s stock ownership provisions, and were unacceptable to the defendant.
For whatever reasons, defendant never carried out his part of the Agreement, and plaintiff commenced suit on November 5, 1992, alleging several million dollars of consequential damages.
As the Agreement had also provided that “Senator Edward Kirby has been appointed arbitrator/mediator of the corporation and can name his successor,” this Court (Butler, J.) on November 23, 1992 entered the following order:
The parties have agreed to submit this dispute to Edward Kirby, who had been selected by the parties as a potential neutral intermediary during the course of the parties’ business negotiations. In the event that the matter is not resolved by the intervention of Mr. Kirby, the attorneys are to report for a status conference on January 22, 1993. A trial date will be set at that conference.
Defendant, however, declined to submit to nonbinding mediation as ordered, but instead moved to have the case submitted to Kirby for binding arbitration, which plaintiff opposed. This Court (Spurlock, J.) on January 14, 1993, allowed defendant’s motion to compel arbitration and to stay the court proceedings.
After a lengthy arbitration, arbitrator Kirby, on January 12, 1994, issued his decision, in which he concluded that the parties had never agreed upon the contemplated corporate documents, resulting in the non-occurrence of a contractual “condition precedent,” so that defendant’s non-performance of the agreement had been excused.
On February 14, 1994, defendant filed a motion to confirm the award, and on March 4, 1994, plaintiff filed a motion pursuant to G.L.c. 251, §12(a)(l) and (2) to vacate the award. In support of plaintiffs motion, plaintiff filed an affidavit of William A. Tuttle, who, as noted above, had been plaintiffs attorney in the negotiations and who had drafted the Agreement and related corporate documents, but who had not represented plaintiff in the arbitration or lawsuit.
In his affidavit, Tuttle relates two ex parte conversations between himself and Kirby in the period subsequent to the arbitration hearing but prior to Kirby’s rendering a decision. In one of these, Tuttle purportedly remarked to Kirby, that he “never acted on a lark of his own with regard to any matter,”[1] and on the second of these, was told by Kirby that he (Kirby) was “not sure he would be able to render a fair decision” in the arbitration. Tuttle’s affidavit is also replete with surmises, conjectures and assumptions concerning possible social or business relationships which might have existed between Kirby and the defendant. Tuttle does not, however, purport to have any hard factual evidence in that regard.
CONCLUSIONS
Section 12 of the Uniform Arbitration Act, inserted into the General Laws as G.L.c. 251, §12, sets out, in subsection (a), the grounds upon which an arbitration award may be vacated, including three alleged here: (1) that the “award was procured by corruption, fraud or other undue means”; (2) that “there was evidence of partiality by an arbitrator as a neutral, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party”; and (3) that “the arbitrators exceeded their powers.” An application to vacate an award based on Section 12(a)(2) (which relates to misconduct on the part of an arbitrator) must be filed within thirty days of the applicant’s receipt of the arbitration decision, whereas an application to vacate based on Section 12(a)(1) (which relates to misconduct by a party) need not be filed until 30 days after the applicant knew or should have known of the misconduct. See Section 12(b); Bernstein v. Gramercy Mills, Inc., 16 Mass.App.Ct. 403 (1983).
With regard to the allegations in Tuttle’s affidavit paras 6-17 and 19, concerning possible business or social relationships between Kirby and the defendant, they are based on conjecture and surmise and no hard *598 evidence or facts are alleged which would indicate that Kirby was not impartial. The allegations are similar to those in Wilson v. Dan McCabe’s Creative Carpentry, Inc., 11 Mass.App.Ct. 956 (1981), where vacation of an award was held not to be warranted. Moreover, plaintiff admits that Kirby was selected as “arbitrator/mediator” with regard to the Agreement precisely because both parties knew and respected Kirby, whose political affiliations and activities were well known. In addition, Tuttle's affidavit is replete with his personal knowledge with regard to both Kirby’s and Ritter’s background and their respective business activities in their mutual home town, Whitman, Massachusetts, and it is inconceivable that Tuttle (who was plaintiffs attorney in drafting the Agreement which included the provision designating Kirby “arbitrator/mediator”) failed to communicate such information to the plaintiff during the course of his representation. Plaintiff thus knew or should have known of any such appearance of partiality. See Doherty v. Phoenix Ins. Co., 224 Mass. 310 (1916). Finally, plaintiffs application to vacate the award for partiality or misconduct of Kirby under Section 2(a)(2) is simply filed too late, as more than thirty days had passed after plaintiffs receipt of the award. G.L.c. 251, §12(b). The same considerations apply to bar any vacation of the award based on Kirby’s off-hand expression of doubt as to whether he could be fair, in response to Tuttle’s question in the second alleged conversation.
The more serious challenge to the award is the alleged first conversation between Tuttle and Kirby, wherein Tuttle exclaimed, apparently gratuitously and without any specific inquiry by Kirby, that he had never acted for anyone on a “lark of his own," i.e., without authority of his clients. The alleged significance of this statement arises out of the fact that plaintiffs position at the arbitration hearing had been that the admittedly objectionable draft of By-laws and Articles of Organization (which had been authored by Tuttle and provided to defendant and which defendant relied upon at the arbitration to show the non-occurrence of a condition precedent) had not been authorized by the plaintiff, but had been provided by Tuttle “on a lark of his own.” Tuttle’s purported statement to Kirby that “Bill Tuttle never does anything on a lark of his own” thus contradicted plaintiffs denial, at the arbitration, that there had been any failure to agree on the content of the corporate documents, i.e., any non-occurrence of a “condition precedent.”
In deciding whether this alleged ex parte communication comprised sufficient misconduct or fraud by a party such as to invalidate the award under Section 12(a)(1), it must be noted that the situation differs significantly from that in every other case where such a communication has been held to comprise party misconduct sufficient to vacate an award. In every reported case in which an award was vacated due to ex parte communications, the communication was made by a party (or his representative) in an attempt to influence the award in favor of that party. See Strong v. Strong, 63 Mass. 560 (1852); Hahn v. A.G. Becker Paribas, Inc., 116 Ill.App.3d 660 (Ill.App. 1987); and the other cases cited in Annotation: “What Constitutes Corruption, Fraud or Undue Means in Obtaining Arbitration Award Justifying Avoidance of Award Under State Law,” 22 ALR 4th 366, 384. Here, on the other hand, the alleged ex parte communication was not made by a party or his authorized attorney, but by an ex-attorney of a party, and the communication, if believed by the arbitrator, was calculated to influence the arbitrator in favor of the defendant (who was not in a position to have instigated the incident). In these circumstances, it would be anomalous to permit the plaintiff to use the alleged remark to vacate the award.[2]
Plaintiff further restates his objection to having been ordered to binding arbitration, on the ground that he never agreed thereto. While the Agreement does appear to be devoid of any explicit agreement to submit to binding arbitration, and Judge Butler initially ordered only non-binding mediation, Judge Spurlock subsequently ruled (over plaintiffs objection) that the matter was to be resolved by binding arbitration. This is now the “law of the case” and is not subject to reconsideration on these motions.
ORDER
For the reasons stated above, defendant’s motion to confirm the arbitration award is ALLOWED and plaintiffs motion to vacate the award is DENIED.

 The purported significance of this alleged remark is explained below.

 remark, if truthful, would also tend to support the correctness of the award on the merits, so that there is no indication that a miscarriage of justice has occurred. Significantly, plaintiff did not call Tuttle to testify at the arbitration, and admits that he would have invoked the attorney-client privilege if defendant had done so. In these circumstances, it seems incongruous to permit plaintiff to enlist his former counsel’s affidavit with respect to that counsel’s own statement to the arbitrator in an attempt to set aside the award.