**DEPARTMENT OF DEFENSE DEPENDENTS SCHOOLS, ALEXANDRIA, VIRGINIA, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 87–3126.

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1988.

Decided July 28, 1988.

Howard S. Scher (William Kanter, Appellate Staff, Civil Div., Dept. of Justice, Richard W. Willard, Asst. Atty. Gen., William C. Owen, Asst. Director of Personnel, Labor–Management Div., Dept. of Justice, Washington, D.C., on brief), for petitioner.

Elsa D. Newman (Ruth E. Peters, Sol., William E. Persina, Deputy Sol., Arthur A. Horowitz, Associate Sol., Federal Labor Relations Authority, Washington, D.C., on brief), for respondent.

(Judith D. Galat, Staff Counsel, Mark D. Roth, General Counsel, Washington, D.C., on brief), for amicus curiae American Federation of Government Employees, AFL–CIO.

Before WIDENER and MURNAGHAN, Circuit Judges, and McMILLAN, United States District Judge for the Western District of North Carolina, sitting by designation.

WIDENER, Circuit Judge:

The Federal Labor Relations Authority (FLRA) is charged with administering federal sector labor relations pursuant to Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. §§ 7101 et seq. The FLRA has determined that when the Federal Services Impasses Panel delegates its authority to resolve bargaining impasses to an individual panel member which it calls a mediator-arbitrator, agency head review of the collective bargaining agreement is foreclosed.[1] *Department of Defense Depend-*

---

1. The statutory authority for agency head review of collective bargaining agreements is found at 5 U.S.C. § 7114(c) and follows:

(c)(1) An agreement between any agency and an exclusive representative shall be subject to approval by the head of the agency.

(2) The head of the agency shall approve the agreement within 30 days from the date the agreement is executed if the agreement is in accordance with the provisions of this chapter and any other applicable law, rule, or regulation (unless the agency has granted an exception to the provision).

(3) If the head of the agency does not approve or disapprove the agreement within the 30-day period, the agreement shall take effect and shall be binding on the agency and the exclusive representative subject to the provisions of this chapter and any other applicable law, rule, or regulation.

(4) A local agreement subject to a national or other controlling agreement at a higher level

*ent Schools (Alexandria, Va.),* 27 FLRA 586 (1987). We believe that the FLRA has erroneously construed the legislation dealing with this issue, and that the statutory provisions for agency head review cannot be abrogated by such unilateral action of the Impasses Panel. We therefore vacate the order of the FLRA and remand with instructions.

Department of Defense Dependents Schools (DODDS) operates schools located on U.S. military installations in 20 countries for the education of minor dependents of Department of Defense civilian and military employees assigned overseas. The instant case arises from negotiations between one of DODDS' subdivisions, DODDS–Mediterranean, and the Overseas Federation of Teachers (the union), the exclusive representative of the approximately 900 teachers employed within DODDS–Mediterranean.

Collective bargaining between the parties, undertaken in January 1983, reached impasse on many issues by April 1983. Resort to the assistance of the Federal Mediation and Conciliation Service, in accordance with the statutory scheme,[2] failed to produce agreement, and in June 1983 the union filed a request with the Impasses Panel to consider the negotiation impasse. The Impasses Panel referred the matter to Robert G. Howlett, then its Chairman, as it described the reference "for mediation-arbitration," vesting him with authority to mediate with respect to the issues and to issue a binding decision as an arbitrator on any issues that remain unresolved.

A substantial number of outstanding issues were resolved during the mediation conducted by the Panel Chairman, two issues were "submitted to the Panel" by him, and the other unresolved issues were subject to formal hearings conducted in September 1983 before Chairman Howlett. The resulting collective bargaining agreement was comprised of some provisions which were negotiated by the parties, some which were imposed by the Federal Service Impasses Panel, and some which were imposed by Chairman Howlett in his role in mediation-arbitration.[3] In the Decision and Order issued by the Impasses Panel, the Panel discussed only the two provisions for which Chairman Howlett had directed written submissions be made to the Panel, and its order addressed only those two issues. *Dep't of Defense Dependents Schools–Mediterranean Region,* Case No. 83 FSIP 102. It is the FLRA's position that the foregoing Order of the Impasses Panel constitutes action by the full panel and therefore qualifies as "final panel action" while the imposition of terms by Chairman Howlett, albeit as a "designee" of the Impasses Panel, is action by a single panel member and therefore is not final panel action. Thus, the FLRA takes the position that action by the full Impasses Panel is subject to agency head approval when taken, but action by its "designee" is not unless by exception to an arbitrator's award.

shall be approved under the procedures of the controlling agreement or, if none, under regulations prescribed by the agency.

**2.** 5 U.S.C. § 7119 provides for the resolution of negotiation impasses. This section provides for resort to the services of the Federal Mediation and Conciliation Service, or other third party mediation, as a prerequisite to requesting consideration of the Federal Service Impasses Panel. The Panel must consider the impasse upon the request of either party, and may take action. 5 U.S.C. § 7119(b)(1); (c)(5).

**3.** The Impasses Panel initially determined that 104 unresolved issues existed when the union filed its request for assistance. Of these, nine remained after mediation by Chairman Howlett. Of the nine, two were submitted to the Impasses Panel. Of the contested provisions considered by Chairman Howlett in his role in "mediation-

arbitration," only two are at issue in this appeal: one permits the teachers to perform assigned duties "consistent with academic freedom," while the other authorizes travel and per diem reimbursement for union representatives attending regional meetings. Finally, of the two provisions at issue here, both imposed by Chairman Howlett, the one pertaining to academic freedom (Article 6, section 1.f of the collective bargaining agreement) was imposed during the mediation phase of impasse resolution, rather than as a result of the more formal hearings conducted before Chairman Howlett. As a result of the formal hearings before him, he imposed the second item at issue, a requirement that the government pay travel and per diem for up to two union representatives at regional labor management meetings.

The Union membership ratified the contract in early January 1984, and DODDS–Mediterranean forwarded the agreement for agency review. The agency head disapproved several provisions, including the two imposed by Chairman Howlett as designee, and DODDS–Mediterranean advised the union that it would not implement the disapproved sections. The union then filed an unfair labor practice charge with the FLRA, and the General Counsel for the Authority issued a complaint charging DODDS with unfair labor practices in violation of 5 U.S.C. §§ 7116(a)(1), (5), (6) and (8).[4] The FLRA assigned an administrative law judge (ALJ) to conduct a hearing on the unfair labor practice complaint. He did not deal with the procedural questions which are the subject of this case, but found DODDS guilty of unfair labor practices, and determined that only the provision concerning academic freedom[5] had been properly disapproved. He ordered DODDS to rescind its disapproval of the other provisions which included the provision with respect to travel pay for union representatives imposed by Chairman Howlett. The Authority (Member Frazier concurring and dissenting) found, as pertinent here, that DODDS committed an unfair labor practice by reviewing and disapproving the two contractual provisions which had been imposed by Chairman Howlett. The FLRA determined that the Impasses Panel, by delegation of its duty to a single member, had foreclosed the agency head review which is available when the full panel acts to end an impasse. The Authority concluded that where the Impasses Panel has directed the parties to engage in interest arbitration, a provision imposed by a panel member acting as an arbitrator is not subject to agency head review under § 7114(c) of the statute. The FLRA distinguished between action by the full panel and action by a single panel member, finding that the former is subject to review while the latter is not.[6] DODDS has petitioned for review of the FLRA decision, and the FLRA has cross-petitioned for enforcement.

Final orders of the FLRA are subject to judicial review under 5 U.S.C. § 7123(a) except awards by an arbitrator under § 7122 unless that award involves unfair labor practices and except bargaining unit determination under § 7112. We review the FLRA's decision under 5 U.S.C. § 706 to determine if it is arbitrary, capricious or an abuse of discretion, or otherwise not in accordance with law. While the Authority is entitled to deference in the exercise of its application of the Civil Service Reform Act to federal labor relations, this deference "cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress". *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983), quoting *American Ship Building Co. v. NLRB*, 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965). See also *FLRA v. Aberdeen Proving Ground*, —— U.S. ——, 108 S.Ct. 1261, 1263, 99 L.Ed.2d 470 (1988) (per curiam). We are also mindful that if the statute is silent or ambiguous with respect to the specific issue, our role is limited to determining whether the FLRA's interpretation is premised upon a permissible construction of the statute. See *Chevron, U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

---

**4.** The complaint charged DODDS with interference in the bargaining relationship between the union and DODDS–Mediterranean in violation of 5 U.S.C. § 7116(a)(1) and (5); failure and refusal to approve an agreement pursuant to § 7114(c), in violation of 5 U.S.C. § 7116(a)(1) and (8); and failure and refusal to cooperate in impasse procedures and decisions in violation of 5 U.S.C. § 7116(a)(1) and (6).

**5.** Academic freedom as used in this case is not the usually thought of freedom "to teach according to personal convictions about what is or

appears to be the truth" without fear of reprisal. *Webster's Third New International Dictionary.* Rather, it was intended to "transfer to bargaining unit members the discretion to determine which teaching methods would be used to teach a prescribed curriculum." ALJ op. p. 15.

**6.** Significantly, lack of authority of the agency head to approve or disapprove the agreement was never mentioned by any party until the decision by the FLRA. The subject was brought up *sua sponte* by the Authority in its decision.

It is useful to distinguish what has been called "interest" or "contract" arbitration, at issue here, from the more familiar "grievance" or "rights" arbitration. There are critical differences between the two; an interest arbitrator in resolving a bargaining impasse, is authorized to formulate the actual employment terms to govern the relationship between the parties who have bargained to impasse. The grievance arbitrator, however, is empowered only to interpret and apply the express terms of an existing contract. The grievance arbitrator's discretion is defined by the terms of the collective bargaining agreement; the interest arbitrator has authority to impose an appropriate resolution to the impasse.[7] It is a distinction which Congress had in mind when it enacted this legislation.

Title VII of the Civil Service Reform Act of 1978 represented the culmination of years of experience in the conduct of federal labor relations pursuant to successive Executive Orders commencing in 1962 with Executive Order 10988, which granted limited collective bargaining rights to federal employees. That history is succinctly traced in *BATF*, 464 U.S. at p. 91–93, 104 S.Ct. at p. 441–442.

The Reform Act created a statutory basis for federal sector labor relations. Section 7119(b) provides that upon the failure of the parties "to resolve a negotiation impasse," upon the "request" of "either party", the Impasses Panel shall investigate the matter and may "resolve the impasse." §§ 7119(b)(1), (c)(5)(A), (c)(5)(B). According to the statute, § 7119(a) and (b), once negotiations have reached impasse, the parties should first seek voluntary arrangements, "including the services of the Federal Mediation and Conciliation Service or any other third-party mediation". If the impasse remains, the statute outlines the procedure to be employed: (1) "either party may request the Federal Service Impasses Panel to consider the matter," *or* (2) "the parties *may agree* to adopt a procedure for binding arbitration of the negotiation im-

passe, but only if the procedure is approved by the Panel." 5 U.S.C. §§ 7119(b)(1) & (2) (italics added). Once the Impasses Panel asserts jurisdiction, it has wide latitude in assisting the parties in resolving the impasse. The Panel has authority to "take whatever action is necessary and not inconsistent with ... [the statute] to resolve the impasse". 5 U.S.C. § 7119(c)(5)(B)(iii).

In the words of the FLRA:

When parties request the Panel to consider their impasse, section 7119(c)(5)(A) provides that the Panel shall investigate and consider the impasse. After investigation and consideration, the Panel can either recommend procedures for the resolution of the impasse or the Panel can assist the parties in resolving the impasse. Under section 7119(c)(5)(B), if the parties do not resolve their impasse through Panel-recommended procedures or Panel assistance, the Panel is authorized to take whatever action is necessary and not inconsistent with the Statute to resolve the impasse. Under section 7119(c)(5)(C), the action taken by the Panel constitutes the Panel's "final action" on the impasse and is binding on the parties.

*United States Department of Justice, Immigration and Naturalization Service and AFGE, National Border Patrol Council,* 31 FLRA No. 94, slip op. at 4. (April 13, 1988).

The Reform Act also continued the practice of agency head review of collective bargaining agreements. 5 U.S.C. § 7114(c)(1).

Thus, upon impasse, the following situation exists. When the parties reach an impasse in negotiating a collective bargaining agreement, they may either agree to binding arbitration under § 7119(b)(2) if the procedure is approved by the Impasses Panel, or either party may request the Impasses Panel to consider the matter under § 7119(b)(1). If arbitration is the route agreed upon, either party dissatisfied with

---

7. See generally, Craver, *Public Sector Impasse Resolution Procedures,* 60 Chicago Kent L.Rev. 779 (1984).

the arbitration may seek review of the award by the Authority under § 7122, in which event the standard of review to upset the award is that it must be contrary to any law, rule or regulation or on other grounds similar to those applied by federal courts in private sector labor-management relations. The award is "final and binding," and the agency "shall take the actions required by an arbitrator's final award." Although the question is not before us, it would appear that an award in an agreed upon final and binding arbitration is not subject to agency head review under § 7114(c), and neither is the decision of the Authority upon an arbitration review subject to judicial review under § 7123 unless the order of the Authority reviewing the award involves an unfair labor practice under § 7118.[8]

On the other hand, if, upon the request of either party, consideration by the Impasses Panel is the route chosen, the parties are in agreement that a decision by the panel is subject to agency head review under § 7114(c), and the Authority takes the position, acquiesced in by the agency, that, if the head of the agency does not approve the collective bargaining agreement, which, of course, would include the decision of the Impasses Panel, that review of that head of agency decision by the Authority may be taken by way of an unfair labor practice charge under § 7118 of the statute or by way of review of an agency's allegation that there is no duty to bargain in good faith about the matter at hand under § 7117(c)(1) of the statute.

 That leaves before us two well defined questions. The first is: did Congress intend that the Impasses Panel could insulate a decision of one of its members called in the statute "its designee," § 7119(c)(5)(A), from agency head review under § 7114(c), when the decision of the panel itself is not so insulated? The second

and closely allied question is whether or not a decision by a "designee" of the Impasses Panel is an award in arbitration not reviewable by the agency head and subject only to review under § 7122. We are of opinion the decision of a "designee" of the Impasses Panel is no different in the context present here than a decision of the panel itself and thus is subject to agency head review under § 7114(c). We are further of opinion that the decision of a "designee" of the Impasses Panel does not amount to binding arbitration agreed upon by the parties and subject to review under § 7122.

The idea that a "designee" of the Impasses Panel should have any other or different or even greater authority than that of the panel is something that comes to us without authorization by way of statute and not even by way of regulation so far as brought to our attention by the FLRA. Nothing in the legislative history indicates any such difference. Neither is the decision of any court brought to our attention for this proposition. *Webster's Third New International Dictionary* defines "designee" simply as "one who is designated or delegated," and, while the "designee" may have been designated to participate in "mediation-arbitration," to now say, as the FLRA contends, that the "designee" is delegated other or different or greater authority than that of the Impasses Panel itself is simply a use of the word which logic and ordinary English usage will not permit. So, we are of opinion that the "designee" of the Impasses Panel can have no further authority than that possessed by the panel itself.

To properly weigh the problem at hand, one must place himself in the shoes of the agency head when an impasse has been reached in collective bargaining. He can agree to arbitration under § 7119(b)(2). In that event, the arbitration award is review-

---

8. "... the awards of arbitrators, when they become final are not subject to further review by any other authority or administrative body, including the Comptroller General." House Conference Report 95–1717, Oct. 5, 1978, p. 158, reported in Leg.Hist. of the statute beginning at p. 793.

It is interesting to note that FLRA member Frazier takes the position that arbitrators' awards are subject to agency head review under § 7114(c), but agrees with the FLRA that a decision by a "designee" of the Impasses Panel to impose contract terms is an award by an arbitrator rather than a decision by the Panel.

able by the FLRA under § 7122 and the decision of the FLRA on review is not usually subject to judicial review under § 7123. Thus, when an agency head agrees to arbitration under § 7119(b)(2), he forfeits his right to agency head review under § 7114(c), and he also forfeits his right to ordinary judicial review of the decision of the FLRA. If the agency head does not agree to arbitration under § 7119(b)(2), either he or the union may request the Impasses Panel to consider the matter under § 7119(b)(1). In that event, the Panel, skipping intermediate steps, may take whatever action is necessary to resolve the impasse under § 7119(c)(5)(B)(iii), even to imposing contract terms. In this event, the agency head does not forfeit his right to approve or disapprove the agreement under § 7114(c), although the Impasses Panel may have imposed actual terms of the collective bargaining agreement. He also does not forfeit his right to ordinary judicial review of an adverse decision of the FLRA which may have disagreed with his decision to disapprove an agreement.

So the agency head, at the time an impasse is reached or shortly thereafter, must make up his mind which route he is to follow, the arbitration route or the Impasses Panel route. Nothing in the statute, however, gives the Impasses Panel the authority to impose without consent upon an agency head final and binding arbitration not subject to agency head review under § 7114(c). There is no ambiguity in the statute to make this construction permissible, and that there is none is supported by H.R.Conf.Rep. 95–1717, Oct. 5, 1978, p. 158, which paraphrases the statute as follows: "House subsection 7119(b) states after voluntary arrangements prove unsuccessful, the parties may agree to a procedure for binding arbitration, *rather than* to require the services of the federal service Impasses Panel, 'but only if the procedure is approved by the panel'". (Italics added) Thus, we see that the statute read literally as well as the Conference Report, the most authoritative item of legislative history, support the fact that there are two routes to be chosen upon impasse.

The construction put upon the statute by the FLRA is contrary to two key provisions of the statute. It imposes final and binding arbitration upon an agency head, not subject to agency head review, without his consent. The statute, § 7119(b)(2), specifically provides for such arbitration only if the parties "*agree* to adopt a procedure for binding arbitration." (Italics added) The construction given by the FLRA also permits the Impasses Panel by use of a "designee" to insulate from agency head review under § 7114(c), a decision which would be subject to such agency head review if made by the Panel itself. We find nothing in the legislative history to authorize any such strained construction. Neither is there anything in the statute to such effect, nor is the statute ambiguous. We are thus of opinion the decision of the FLRA is not in accordance with law and that it has made an unauthorized assumption of a major policy decision properly made by Congress. *BATF*, 464 U.S. at p. 97, 104 S.Ct. at p. 444.

The parties to this case, until the construction of the case by the FLRA, treated the terms imposed by Chairman Howlett with respect to academic freedom and travel and per diem for union representatives as terms of the contract, which they were. The parties further treated those terms as being subject to approval or disapproval by the agency head under § 7114(c). Thus, the parties treated the terms imposed by Chairman Howlett as provisions of a collective bargaining agreement imposed by final action by the Panel. See § 7119(c)(5)(C). We are of opinion this was the correct way to treat them, and we treat them the same way.

In the order consolidating the cases and providing for notice of a hearing, the Regional Director of the FLRA treated as an unfair labor practice the failure and refusal of the agency "to approve an agreement pursuant to § 7114(c) of the statute." Nothing was mentioned with respect to treating the terms as those imposed by an arbitrator under § 7119(b)(2). Despite the fact that the ALJ decided the merits of these questions, the FLRA refused to consider them, as we have set forth above in the opinion. For the reasons there stated,

we think this was error. So far as the final order of the FLRA refused to consider the terms imposed by Chairman Howlett with respect to the questions of academic freedom and travel and per diem of union representatives to regional meetings, the petition for review is granted, the order complained of is vacated, and enforcement is denied, and the case will be remanded to the FLRA to consider those questions on their merits.

ENFORCEMENT DENIED AND REMANDED WITH INSTRUCTIONS.