**GOVERNMENT OF THE VIRGIN ISLANDS DEPARTMENT OF EDUCATION, Plaintiff**

v.

**ST. THOMAS/ST. JOHN EDUCATIONAL ADMINISTRATORS ASSOCIATION AND THE ST. CROIX EDUCATIONAL ADMINISTRATORS ASSOCIATION, Defendants**

Civil No. 516/1990

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

July 24, 1990

72

PAUL GIMENEZ, ESQ., Office of Attorney General (Department of Justice), St. Thomas, V.I., *for plaintiff*

JANE HOWARD–MARTIN, ESQ., Assistant Attorney General—Labor (Office of Collective Bargaining), St. Thomas, V.I., *for plaintiff*

WILLIAM S. H. CHAPMAN, ESQ. (LAW OFFICES OF JOHN R. COON), Christiansted, St. Croix, *for defendants*

SWAN, *Judge*

## MEMORANDUM OPINION

## INTRODUCTION

Plaintiff seeks a writ of review of an arbitrator's decision, and alternatively seeks injunctive relief in the form of preliminary and permanent injunctions to prohibit the implementation of an arbitrator's decision. For the reasons which follow, the arbitrator's decision will be affirmed.

## FACTS

In April, 1989, the parties executed a Collective Bargaining Agreement ("CBA") the duration of which encompasses September 1, 1987 to August 31, 1991. From the barely legible copy of the CBA submitted with the pleadings, it appears that after negotiations between the parties an impasse developed on two issues. Therefore, the parties agreed to submit the unresolved issues to binding arbitration. Accordingly, in a November 29, 1989 Joint Petition and Stipulation for Arbitration Procedure ("joint petition") the parties submitted the two issues for the arbitrator to decide, namely:

a. Whether all administrators shall be ten (10) month employees and whether the work day for the administrators shall not exceed seven (7) hours excluding lunch or whether all administrators except principals and assistant principals shall be twelve (12) month employees and whether all administrators shall have an eight (8) hour work day excluding lunch.

b. Whether or not any employee of the Executive Branch in any unclassified or temporary position who has been employed

73

by the Government as an unclassified or temporary employee for two (2) consecutive years or more may elect to become classified employees under the terms of Act 4979 to the Director of the Division of Personnel, Government of the Virgin Islands.

The arbitrator held hearings on May 11, May 30, and June 7, 1990, during which the parties argued their respective positions, presented testimony, and offered documentary evidence. Subsequently, the arbitrator issued his June 11, 1990 Opinion and Arbitration Award in which he concluded as follows:

The school work schedule shall comprise or consist of a ten (10) month school year and a work day shall not exceed eight (8) hours excluding lunch, for all Administrators.

The provisions of 3 V.I.C. Sec. 498 are applicable to and made a part of the express terms of the Collective Bargaining Agreement.

Perceiving the Arbitrator's decision as untenable and erroneous, plaintiff filed suit for a writ of review. The bases of plaintiff's contentions are that the arbitrator exceeded the scope of his authority, that the arbitrator's award was arbitrary and capricious, and that the award was devoid of evidentiary support. Plaintiff further contends that the award is violative of public policy. On June 26, 1990, the Court entered an order granting plaintiff's petition for a writ of review, and on July 17, 1990, the Court heard oral arguments thereon.

## DISCUSSION

Although the controversy involves binding arbitration, the Court concluded that it has jurisdiction to review the matter pursuant to 5 V.I.C. App. V Rule 11(a) which provides in pertinent part:

A Writ of review may be allowed by the Court upon the petition of any person aggrieved by the decision or determination of an officer, board, commission, authority, or tribunal. . . .

■■ The underpinning of plaintiff's position is the argument that the case involves "interest" arbitration as opposed to "rights" or grievance arbitration. Such a distinction, plaintiff argues, mandates a different role of the arbitrator in each type of arbitration. See Elkouri and Elkouri, "How Arbitration Works," Fourth Edition, at 98-117 (1985) for a distinction between the two types of arbitration. Also, see Department of Agriculture, Food and Nutrition Service, Western Region v. Federal Labor Relations Authority, 879 F.2d

74

655, 657 n.4[1] (9th Cir. 1989); Local 344 Leather Goods, Plastic and Novelty Workers' Union AFL–CIO v. The Singer Company, 478 F. Supp. 441 (N.D. Ill. 1979). Nonetheless, the Court cannot find a distinction in the standards to be applied when reviewing an arbitrator's decision resulting from "interest" or "rights" arbitration. Upon specific questioning by the Court, neither party could offer any legal authority to substantiate the proposition that there is a different standard of court review in each case. The plaintiff, however, contends that the additional element of public policy should be given consideration when reviewing an arbitrator's decision in interest arbitration. The Court will address this matter later in the opinion.

■ There are strong public policies, both federal and national, favoring arbitration as an alternative means of resolving disputes. Butterkrust Bakeries v. Bakery Confectionery and Tobacco Workers International Union, AFL–CIO, Local No. 361, 726 F.2d 698 (11th Cir. 1984); Graphic Communication Union, Chicago Paper Handlers' and Electrotypes' Local No. 2 v. Chicago Tribune Company, 779 F.2d 13 (7th Cir. 1985); Coastal (Bermuda) Ltd. v. E.W. Saybolt And Company, Inc., 761 F.2d 198 (5th Cir. 1985). Therefore, and not surprisingly, the scope of judicial review of an arbitrator's decision is extremely narrow, very limited and necessarily quite restricted. Delta Air Lines, Inc. v. Air Line Pilots Associations International, 861 F.2d 665, rehearing denied 867 F.2d 1431 (11th Cir. 1988); Sunshine Mine Company v. United Steel Workers of America, AFL–CIO, CLC, 823 F.2d 1289 (9th Cir. 1987). Furthermore, the scope of judicial review is succinctly set forth by the United States Court of Appeals for the Seventh Circuit in the following language:

> Judicial review of arbitration award is extremely limited; while with other differential standards of review, courts review merits of question or issue decided below, but must be very certain that decision below was erroneous before they reverse that decision, when reviewing arbitration award, standard of review is even more deferential since judiciary has no power to reach and determine merits of arbitration awards merely because of dis-

---

[1] "Interest" arbitration is used to resolve a bargaining impasse; an interest arbitrator is authorized to formulate and impose actual employment terms. "Grievance" or "rights" arbitration, on the other hand, involves only the interpretation and application of express terms of an existing contract. See Department Defense Dependents Schools v. FLRA, 852 F.2d 779, 783 n.7 (4th Cir. 1988).

agreement, even strong disagreement, with arbitrator's interpretation of contract, so that as long as arbitrator interpreted contract in making his award, his award must be affirmed even if he clearly misinterpreted contract. E.I. Dupont de Nemours and Co. v. Grasselli Employees Independent Ass'n of East Chicago, Inc., 790 F.2d 611 (7th Cir. 1986), certiorari denied, 107 S.Ct. 186, 479 U.S. 853, 93 L.Ed.2d 120.

Additionally, it is well settled that the scope of review of an arbitration award is limited to a determination of whether the arbitrator has exceeded his authority, or whether he has failed to perform his contractual duty or whether the arbitrator's award is arbitrary and capricious. Rissing v. Department of Public Safety, Government of the Virgin Islands, 20 V.I. 426 (Terr. Ct. St. C. 1984); V.I. Nurses Association's Bargaining Unit v. Schneider, 18 V.I. 259 (D.C.V.I. 1981), aff'd, 668 F.2d 221 (3rd Cir. 1981); Local 616, Int'l Union of Electrical, Radio & Machine Workers, AFL–CIO v. Byrd Plastics, Inc., 428 F.2d 23 (3rd Cir. 1970); Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123 (3rd Cir. 1969).

In this case, the parties submitted to the arbitrator two issues for resolution.

■ It is noteworthy that the first issue is essentially couched in language denoting one of two possibilities of either ten months or twelve months employees. Therefore, even though it is "interest" arbitration, the parties' joint stipulation effectively prohibits the arbitrator from formulating or structuring anything other than one of two viable terms for inclusion in the agreement. Similarly, on the second issue, the same restriction appertains. The arbitrator must decide only whether to incorporate or exclude certain statutory language from the parties' agreement.

■ In reviewing the arbitrator's decision, the Court finds that, as to the first issue, the arbitrator stayed within the bounds of the scope of his authority. He specifically determined the months of the school year and the hours of the work day from specific numbers agreed upon by the parties. Consequently, the Court must conclude that the arbitrator did not exceed the scope of his authority on the first issue.

■ In addressing plaintiff's second contention, the court has reviewed the language of the second issue in the joint petition as it compares with the language in the arbitrator award. It is noteworthy that the provisions of 3 V.I.C. 498(a), (b), (c) and (d) are identical to

the language in the second issue in the joint petition and identical to the provisions of Section 5 of Act 4979. Therefore, the Court does not find that the arbitrator's use of 3 V.I.C. 498 in his award instead of Act 4979 is so fatal as to warrant a reversal of his decision. Considering the verbatim language in the joint stipulation and the language enumerated in both Act No. 4974 and 3 V.I.C. 498(a), (b), (c) and (d), the Court concludes that the parties understood that the arbitration's disposition of the second issue relates to the pertinent subsections of 3 V.I.C. 498. From its inception, the controversy surrounds these subsections supra; therefore, both parties will be foreclosed from raising superficial issues on this matter.

The Court further finds that the arbitrator's decision "draws its essence" from the parties' agreed upon joint stipulation for arbitration. The Court cannot find anything in the arbitrator's decision to suggest or indicate that it is arbitrary or capricious. The Court, satisfied that the arbitrator's decision "draws its essence" from the issues in the joint petition, will not disturb the decision.

It is a well-settled principle of law that, "a . . . court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be a better one." W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 103 S.Ct. 2177, 2182 (1983); Steelworkers v. Enterprise Wheel And Car Corporation, 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); V.I. Water and Power Authority v. Gastronomical Workers Union, 20 V.I. 116 (Terr. Ct. St. T. & St. J. 1983). The Court believes that the same principle applies in the instances of an arbitrator's award. Moreover, the parties commissioned the arbitrator to decide the issue agreed upon by them. He has made his decision. For the Court to substitute its decision for that of the arbitrator would be tantamount to undermining the arbitration process.

Plaintiff makes much of the fact that the arbitrator's award provides for a "ten (10) month school year" and not ten months as stated in the language of the joint petition. To this fact, plaintiff assigns error. The Court, however, disagrees. This case involves "interest arbitration," therefore the arbitrator must construct a term or terms of the CBA. In so doing, the arbitrator's terms must coalesce with and be consistent with the other terms of the CBA, in order to avoid any ambiguity or incongruity in the terms of the CBA. The CBA mandates 180 school days in the school year which approximates ten months. (See Article XVII, section 1).

■ Additionally, section 2 of Article XIII provides that "All school administrators shall submit to the Insular Superintendent for approval of a schedule of activities for the beginning and ending of the school year. . ." (underline supplied). Accordingly, the use of the language "ten (10) month school year" instead of the language "ten month year" is still within the purview of the other terms of the CBA. The difference is neither substantial nor substantive. Further, the Court cannot find that this discrepancy constitutes being arbitrary and capricious or constitutes exceeding the bounds of the arbitrator's authority.

## PUBLIC POLICY

At the July 17, 1990 hearing, plaintiff further advanced the contention that this case involves "interest" arbitration, and that the arbitrator was obligated but failed to consider "public policy." The public policy, plaintiff contends, manifests itself in the fact that the arbitrator's decision has caused disruption in the Department of Education's operations and has impeded the Department's efforts to provide quality education to the children of this territory. Further, the Department's clients, the children of the territory, will be adversely affected by the chaotic conditions and unpreparedness of the schools in September when the school year commences. Plaintiff further asserts that the decision has placed several federally funded educational programs in jeopardy. As a result, plaintiff concluded that the arbitrator has regrettably failed to consider the children and the adverse effect his decision will have on their education.

One must be mindful that there is a discernible difference between "public policy" and "public interest" in the arbitration process. The matter of public policy consideration had its genesis in Muschany v. United States, 324 U.S. 49, 65 S.Ct. 442, 89 L.Ed.2d 744 (1945). Later, the Supreme Court, citing Muschany, pronounced in W.R. Grace and Co. v. Local Union 759, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) "in order for public policy to preclude enforcement of a collective bargaining agreement as interpreted by [an] arbitrator, the public policy must be well defined and dominant and must be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." Accordingly, the Court regards the concepts of "public policy"and "public interest" as being separate and distinct from each other.

■ Admittedly, a Court may refuse to enforce a collective bargaining agreement when the specific terms contained in that agree-

78

ment violates public policy. In order for an arbitrator's award to violate public policy, the award must create an explicit conflict with "laws and legal precedents" rather than an assessment of "general considerations of supposed public interest." United Paperworkers International Union, AFL–CIO et al. v. Misco Inc., 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

Finally, the concept of "public policy" and what constitutes "public policy" in arbitration awards is capsulated in United States Postal Service v. Nation Association of Letter Carriers, AFL-CIO, 810 F.2d 1239, 1241 (D.C. Cir. 1987) in which the Court not only said that the "public policy" exception is extremely narrow but summarized public policy as follows:

> [I]t is well-understood that court will not enforce an arbitration award if the award itself violates established law or seeks to compel some unlawful action. However, this rule, which is sometimes referred to as a public policy exception, is *extremely narrow*. In W.R. Grace, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1933) the Supreme Court has explained that, in order to provide the basis for an exception, the public policy in question "must be well defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interest." Obviously, the exception is designed to be narrow so as to limit potentially instrusive judicial review of arbitration awards under the guise of "public policy."
>
> . . . [I]t is plain from the language in W.R. Grace itself that the Court meant to say only that an arbitration award may not be enforced if it transgresses "well defined" and "dominant" "laws and legal precedents." It is also clear from the opinion in W.R. Grace that judges have no license to impose their own brand of justice in determining applicable public policy; thus, the exception applies only when the public policy emanates from clear statutory or case law, *"not from general consideration of supposed public interest."*

The Court cannot find that the arbitrator's decision violated any clear statutory or case law. On the contrary, the Court finds that the arbitrator's decision is consistent with local statutory laws that mandates collective bargaining agreements between the Govern-

ment and public employees concerning or determining "wages, hours or other terms and conditions of employment . . ." 24 V.I.C. §§ 363, 374.

Therefore, the plaintiff's reliance on the public policy argument is misplaced.

Plaintiff has alternatively sought injunctive relief, Fed. R. Civ. P. 65. However, at the July 17th hearing, plaintiff withdrew its application for injunctive relief ostensibly because the Court has issued a stay on the arbitrator's award, when it granted the writ of review. Consequently, the issue is moot.

## CONCLUSION

For these reasons, the arbitrator's decision and award are AFFIRMED.

## JUDGMENT

The Court having filed its opinion on July 24, 1990, and being otherwise fully advised in the premises, it is hereby

ORDERED, ADJUDGED AND DECREED that the arbitrator's June 11, 1990 Opinion and Award shall be, and the same is hereby AFFIRMED.