JAMES HARDIN, plaintiff in error, vs. GEORGE BROWN, defendant in error.

[1.] An award of arbitrators at common law, may be attacked and set aside for fraud, and the parties against whom it is rendered, need not resort to a Court of Equity for that purpose.

[2.] Under the Act of 1856, an award can only be impeached for fraud in the arbitrators. But at common law, an award may not only be vacated for corruption or partiality in the arbitrators, but for a mistake into which they have been led by undue means, or into which they have been permitted to fall, by the fraudulent concealment of the party or his agent.

[3.] Courts, while they may not correct the award, or revise the decision of the arbitrators, hold it to be against conscience to take advantage of an award to enforce it, or to use it as a plea to bar a defence.

Complaint, from Bibb Superior Court. Tried before Judge LAMAR, at November Term, 1858.

Suit was brought by James Hardin against George Brown, on a note made by Brown, for the sum of eight hundred dollars, of which the following is a copy:

"$800 00. On or before the 25th day of December next, I promise to pay James Hardin or bearer, eight hundred dollars, for value received, with interest from date. This 22d August, 1856.

Signed)                    GEORGE BROWN."

On the trial of the case in the Court below, plaintiff read in evidence the foregoing note, and rested his case.

In the further progress of the trial, a number of witnesses were examined, and depositions read, disclosing the following state of facts:

On the fourteenth day of April, in the year 1856, George Brown sold to James Hardin a negro woman named Eliza, and her child about one year old, for the sum of eleven hundred dollars. Brown made to Hardin a bill of sale in the usual form with warranty. On the 22d day of August, next succeeding, Hardin came to the house of Brown, in company with his overseer, Alfred Dennis, the brother-in-law of Brown, and told Brown he must take the negroes back. Brown asked him why he wished them taken back; and Hardin answered, "because when I bought her, I thought she was in the family way, but she was not." Brown said, if she was not, he would take her back. It was ten miles from Brown's house to Hardin's plantation, where Eliza was; she was not produced on this occasion, and it did not appear that Brown had seen her after the sale in April. Brown asked Hardin what was the condition of the woman at that time; Hardin replied that he had not seen her since the physician had been attending on her, and called on Dennis to state what the physician had said to him. Dennis then said to Brown, that the physician said she was very low, and if she had another fit she would die; and further, that he would not give his old hat for her chance of life. Brown asked Hardin if he considered the woman worth as much then as she was when the sale was made in April; Hardin said he did. It was then agreed that the trade should be cancelled; and that the negroes should be brought back by Hardin, whenever Brown should decide that she was able to travel. In lieu of returning the purchase money, Brown gave Hardin notes on one Calloway and Dr. Purifoy, amounting to three hundred dollars, and his own note, the subject of this suit, for eight hundred dollars.

When Brown went to Hardin's, the next day, the woman was dead and buried; she died about twelve hours after the trade was cancelled.

The parties afterwards submitted the whole matter to seven arbitrators, and each took oath to abide the award. The submission was not in writing. The award of the arbitrators was, that Hardin should keep the notes, and Brown should take back the child and bill of sale.

At the arbitration, *Dr. Simmons* swore, (as he also did at the trial in the Court below,) that on the night before the arbitration, 17 or 18 days after Eliza's death, he, in company with P. T. Wilson, Alfred Dennis and a medical student, exhumed the body and made an examination of the womb. The disinterment was made about the 11th day of September; the womb was not in a state of putrefaction, and was of the natural size; the body was not very offensive; the examination consumed about five minutes. Is of the opinion that there had been no *fœtus* in the womb from 30 to 60 days before the woman's death; never had seen the woman before she died; Dennis identified the body; never saw any thing after said examination to change his opinion; Hardin procured him to examine the body.

When this testimony was given in at the arbitration, Brown complained that he had received no notice that the body was to be disinterred. Brown admitted that if the woman was not pregnant, she was unsound when he sold her. Hardin also stated to certain persons at the arbitration, that it was useless for Brown to prove that the negro was sound, when the original sale took place, because he admitted she was at that time sound.

*Dr. Searcy* swore at the arbitration, and on the trial, that a few days before Brown sold the woman to Hardin, he saw Eliza; she complained of *nausea* in the mornings, and of giddiness. Dr. S. thought she was in the early stages of pregnancy, and directed her to be bled freely.

After the arbitration, the child and Eliza's clothes and bed-

ding were sent back to Brown's; the clothes of Eliza were stained with blood, and some of them were mutilated; the mattress was also stained, and the blood had run completely through it, all having the appearance of having been used by a woman who had flooded considerably. The clothes and bedding were not exhibited at the arbitration. The arbitrators testified, that the main question to which they directed their inquiries was the one as to the pregnancy of the woman, and that their decision was based on the testimony of Dr. Simmons, and the admission by Brown, that if the woman was not pregnant, she was unsound at the first sale. The clothes and bedding of Eliza were afterwards exhibited to five of them, and three of the five swore, that after seeing the bloody clothes and bedding, they were dissatisfied with their finding, and that if they had seen these things before the arbitration, their finding would have been different.

*Dr. Searcy*, *Dr. Fitzgerald* and *Dr. Hammond* swore, that they did not think such information could be obtained from an examination of the womb of a woman who had been dead seventeen or eighteen days, in the month of August, in this climate, as to enable medical men to determine whether or not there had been a *fœtus* in the womb from 30 to 60 days before death.

Other testimony was offered, but the foregoing statement discloses the material facts proved on the trial.

The jury found a verdict for the defendant, and plaintiff moved for a new trial on the following grounds:

1st. Because the Court erred in admitting testimony to impeach the award of the arbitrators.

2d. Because the Court erred in admitting testimony going to prove the soundness of Eliza at the time of the sale by Brown to Hardin, and also to prove that the bedding and dress were bloody.

3d. Because the Court erred in charging the jury, that if the defendant had proven fraud on the part of the plaintiff, in procuring the award, he had a right to do so in this ac-

tion, and they must find for defendant if they should further believe that the note was procured by fraud, and that the consideration had failed.

4th. Because the Court erred in ruling, that the defendant had the right to plead the notes of Calloway as a set-off.

5th. Because the jury found contrary to law.

6th. Because the jury found contrary to evidence.

7th. Because the Court erred in admitting testimony to prove what Dr. Simmons testified before the arbitrators, and in refusing to rule it out on motion of plaintiff's counsel.

8th. Because the Court refused the motion of plaintiff, to rule out all evidence introduced by defendant, that did not show fraud in the arbitrators. Which motion the Court overruled, and plaintiff excepted.

Poe & Grier, for plaintiff in error.

Speer & Hunter, *contra.*

*By the Court.*—Lumpkin J. delivering the opinion.

This case is somewhat tangled up by the direction it has taken. It will be found, however, to turn mainly upon the validity of the award rendered between the parties.

Hardin bought of Brown a negro woman and child for $1,100. He paid $800 cash, and gave the notes of Jonah D. Calloway and Dr. A. W. Purifoy, which he held, for the balance of the purchase money. Brown warranted the slaves to be sound in body and mind. Hardin kept the negroes four months, and being dissatisfied with the trade, went to Brown to rescind the contract. After parleying with one another, Hardin asserting that the negro woman was worth as much as when he bought her, Brown agreed to the rescission. Not having the cash to refund, he gave his note to Hardin for $800, and re-delivered to him Calloway and Purifoy's notes, at the same time taking back his bill of sale. The woman, whom Brown had not seen since he parted with her, died the

same night, and within twelve hours after this second contract, which took place at Brown's house, some ten miles off from Hardin's plantation, where the negro was. Brown refused to pay his note, alleging that he had been defrauded by Hardin.

They then consented to submit their matters to seven arbitrators, who met, and after hearing the testimony, awarded that Hardin should retain the notes, and Brown take back the negro child. In other words, that the arrangement between the parties should stand. The child was sent home to Brown, and he still has it.

[1.] Hardin sued on the $800 note, and Brown pleaded failure of consideration, and fraud in the procurement of the note. Hardin replied, in effect, the award as a bar to this defence. Brown rejoined, that the award was fraudulently obtained and void. Hardin, by his counsel, objects to the award being attacked in a Court of Law. But we hold, that the judgment of a Court in this State, may be vacated for fraud, *at law*, and of course an award of arbitrators may be.

[2.] Again, Hardin insists, that an award can only be attacked for fraud in the arbitrators. And this is true, under the Act of 1856. But this is an award at common law, and not a submission under that Act. Corruption or partiality are grounds for setting aside an award at common law. And so is a mistake, into which the arbitrators have been led by undue means, or into which they have been permitted to fall by the *fraudulent concealment* of the party or his agent *Metcalf vs. Ives*, 1 *Atk.* 63 ; *Russell on the Power and Duties of Arbitrators*, 53, 1 *Lib. new series*, 636. A Court, in such cases, does not correct an award, or revise the decision of the arbitrators; but holds it to be against conscience to take advantage of the award, by seeking to enforce it, or by using it as a plea to bar a defence.

The complaint against the award in this case is this: When Brown sold the woman Eliza to Hardin, he supposed she was pregnant, although he did not warrant it. When

Hardin vs. Brown.

told of her situation by Dennis, the overseer of Hardin, he admitted that if she was not pregnant, she was diseased. The fact of her pregnancy, then, became to be very material in the altercations between the parties. She had been dead and buried eighteen days when the arbitration took place. The night before the arbitration, Hardin procured Dr. Simmons, who was not his family physician, and who had not attended the woman, to disinter her remains, and make a *post mortem* examination. This was done at 9 o'clock the over-night, by torch light, and within five minutes time! Dr. Simmons testified before the arbitrators the next day not only that there was no *fœtus* in the womb, but that none could have been there from thirty to sixty days before her death! And this proof sprung upon Brown without notice, and given in just at the heel of the investigation, in all probability controlled the case. While Brown was attempting to prove that the woman was sound when he sold her, Hardin stated emphatically, that he did not dispute it, remarking that he had Brown by the leg, any how. But this was not all. Subsequently to the award, the child was sent to Brown's, and with it, the clothes and bedding of the woman, the whole stained with blood, and the mattress on which she lay saturated so as to be wet through, and her apparel partially mutilated, and some of it removed. And these facts coming to the knowledge of Brown, determined him to resist the payment of the note, and the execution of the award. Three of the arbitrators swear, that if they had seen these clothes, furnishing such strong presumptive evidence that the woman had given birth to a child, living or dead, they would not have rendered the award which they did. The weight of medical authority is altogether against the opinion of Dr. Simmons. Physicians who bear testimony to his skill and integrity, express it as their decided belief, that Dr. Simmons could have come to no satisfactory conclusion under the circumstances which attended his examination.

Well, with all this proof before them, the Court instructed

the jury, that if the defendant had shown fraud on the part of the plaintiff, in procuring this award, which he had a right to do, they should find for the defendant, if they should further believe that the note was originally procured by fraud, and the consideration had failed.

The charge is fair, and there is abundant proof in the record to support the verdict.

We sustain the Court upon all the exceptions taken to the admissibility of evidence during the trial, and in refusing to withdraw any portion after it was admitted. And affirm generally the judgment of the Court below.

Judgment affirmed.