## KUHARA TRADING CO., Ltd., v. RUSSELL JOBBERS MILLS.

No. 13366—Opinion Filed Oct. 21, 1924.

**Sales—Refusal to Accept—Action by Seller For Damages—Counterclaim by Buyer For Damages for Defects in Former Shipment—Arbitration and Award.**

Defendant contracted with plaintiff for 50 tons of Chinese shelled peanuts of a certain count per ounce, average quality, at $12.90 per cwt. on board cars for Pacific coast ports to be paid for on presentation of bill of lading, invoice, and certificate of quality of the Chamber of Commerce at the place of shipment; and plaintiff shipped 20 tons of Chinese shelled peanuts and drew sight draft on defendant, with bill of lading attached, invoice, and Seattle Chamber of Commerce certificate of quality attached;

and defendant paid said draft before the arrival of the peanuts at Oklahoma City, and upon the arrival they were unloaded and inspected, and it was found that the peanuts did not come up to the terms of the contract in quality or count, but were of an inferior quality and unfit for the use and purposes for which the defendant purchased them; and upon receipt of the peanuts, and inspection, defendant within a day or two notified plaintiff and sent it a sample of the peanuts and notified plaintiff that it would hold it for any loss sustained by reason of the peanuts not coming up to standard and quality, and the defendant in the same letter canceled the balance of the order, and thereafter plaintiff shipped the remaining 30 tons to defendant at Oklahoma City and drew on it for same and defendant refused to receive said peanuts, and plaintiff sold them to other parties and sued defendant for the difference between the contract price and the amount it received for the 30 tons, and defendant answered and counterclaimed and set up the damages that it sustained on the 20 tons it had paid for, and recovered judgment on its counterclaim. Held, that the trial court was right in submitting the counterclaim to the jury and entering judgment on their verdict.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by Kuhara Trading Company, a corporation, against Russell Jobbers Mills, a corporation. There was judgment for the defendant, and plaintiff appeals. Affirmed.

Keaton, Wells & Johnston, for plaintiff in error.

Shirk, Danner & Fowler and Clarence Mills, for defendant in error.

Opinion by MAXEY, C. The parties appear in this court as they did in the court below, and will be referred to as plaintiff and defendant.

This action is brought for the recovery of the value of 30 tons of Chinese shelled peanuts which plaintiff sold to defendant on December 1, 1919. The contract of sale, which is in writing, was for 50 tons of Chinese shelled peanuts 38-40 count per ounce, fair average quantity, of the season of 1919, to be shipped from the Orient within the months of December, 1919, January, February, and March, 1920, at $12.90 per cwt. delivered aboard cars for Pacific coast ports, to be paid for on presentation with bill of lading, invoice, and certificate of quality at port of entry attached. About January 10, 1920, plaintiff delivered 20 tons of said nuts f. o. b. Seattle, Wash., and

presented sight draft therefore with bill of lading, invoice, and Seattle Chamber of Commerce certificate of quality attached. The defendant did not pay this sight draft until about March 12, 1920, and shipment did not arrive until a day or two afterwards. The defendant unloaded said peanuts and then had them inspected, and found that they did not come up to the quantity or quality mentioned in the contract. But with the exception of a few sacks, said peanuts were all of lower grade and inferior quality than that described in contract. The defendant, after inspecting said shipment, notified the plaintiff that the peanuts did not come up to the grade mentioned in the contract, nor were they of the quality mentioned in the contract, and notified the plaintiff that it would hold plaintiff for the difference in nuts at the contract price, which it paid, and the price they were able to get for the nuts, and canceled the order for the balance of the nuts contracted for. Defendant filed answer to plaintiff's petition, and filed a counterclaim for the difference between the nuts contracted for and what they were enabled to sell the nuts for, and claimed the difference amounted to $3,075.16. The plaintiff filed a reply to the answer and cross-petition in the nature of a general denial, and the case went to trial before the court and a jury, and the jury found for the defendant on its counter-claim, and assessed its damages at $1, and after unsuccessful motion for new trial, plaintiff gave notice of appeal and took time to prepare and serve case-made, and the case was duly appealed to this court.

The plaintiff in error groups its assignment of errors under two heads:

(1) "Permitting defendant to introduce evidence as to the quality of the 20 tons determined by its inspection and examination thereof on delivery at destination."

(2) "Refusal to instruct that the defendant was estopped to prosecute its counterclaim based upon the alleged inferior quality of the 20 tons delivered, because of its refusal to arbitrate the dispute as to quality."

The contract is in writing, but we will only refer to such parts of it as apply to the controversy in this case. The contract provides for 50 tons of 2,000 lbs. each, of Chinese shelled peanuts, new crop 38-40 count, $12.90 per cwt. net Oriental shipping weights, f. o. b. cars Pacific coast ports, terms 30 days, sight draft attached to invoice railroad b-1 and certificate of quality issued by Chamber of Commerce at port of entry. It is claimed by the plaintiff that

it complied with all of the terms of said contract to be performed by it, and it is the contention of the defendant that the peanuts were not of the grade mentioned in the contract, but were of a lower and inferior grade, and that the purported certificate of the Chamber of Commerce at Seattle, Wash., was not such a certificate as is provided for in the contract, and that upon receipt of the 20-ton shipment, it inspected same, and immediately notified the shipper of the defects in grade and quality, and enclosed them a sample of the nuts, as shown by its inspection, and stated:

"As you have shipped sizes and quality inferior to those purchased, we are going to insist upon the proper allowance on goods shipped and that the balance of the contract be canceled."

This letter was dated March 18, 1920, two or three days after the nuts were received and inspected. The Russell Jobbers Mills showed by evidence that they used about four tons of the 20 tons shipped, but were unable to use the balance, and sold them to Yates Brothers, Suffolk, Va., at $35 a ton, f. o. b. Suffolk, Va., and got $2,392 for them. Mr. Russell, of the Russell Jobbers Mills, testified that on April 28 he received a telegram from plaintiff that they would ship the remaining 30 tons unless advised to the contrary, and that on April 30 he wired them that any shipment would be at plaintiff's risk as he would not renew contract already invalidated. It seems that the 30 tons of peanuts were shipped in defiance of defendants' effort to cancel the contract. The invoice accompanying this 30-ton shipment shows they were 34-36 count which was a much larger peanut than contracted for, and one that defendant could not use with its facilities. The defendant refused to receive or pay for the 30-ton shipment, and they were afterwards shipped to someone else by the plaintiff, and it is the difference between the contract price with the defendant and what they received for them that plaintiff is suing for. There are a great number of letters and telegrams contained in the record and considerable oral testimony. We have given all of these careful consideration, and have carefully considered the briefs of the respective parties, and from all of the testimony we are of the opinion that the 20 tons of peanuts shipped to defendant were not up to grade and quality, and that plaintiff, having paid for same, had a right to use such of said nuts as it could handle in its trade, and sell the balance to the best advantage, and recover for the difference between what it paid and what it used and sold, and that

under all of the evidence in the case the defendant had a right to cancel the balance of the order and refuse to accept the 30-ton shipment. Each of the parties have briefed the case on their theory of the law. Both parties have furnished us with able briefs on the case from their viewpoint, but, in our judgment, the authorities are not all applicable to the facts in this case. We have taken occassion to read the authorities, or most of them, cited in plaintiff's brief, and do not think they are in point under our view of the law. In the case of Miller v. Great Western Commission Company (Neb.) 152 N. W. 787, in our judgment, the majority opinion goes too far on the question of custom, and we are inclined to think the dissenting opinion states the better rule of law. The case of Barnsdall Oil Company v. Lehay et al., 195 Fed. 731, and the case of Cruce v. Pierce Oil Company et al., 270 Fed. 728, are not in point. These cases are all authorities on the question of custom and usage. But the facts in the above cited cases are so different, in our judgment, as to make them inapplicable to the case before the court. Plaintiff also contends that the defendant cannot recover on its counterclaim, because it refused to arbitrate the difference, but we cannot agree with this contention. There was no request or offer to arbitrate by the plaintiff, and even if there had been an offer to arbitrate, the contract does not made it compulsory. We have no statute on arbitration in this state, and only the common law to govern arbitration. In states that have statutes on arbitration, they are governed by the statute, and the authorities from those states are based on the statute, while in states that have no statute they are governed by the common law. The case of Deal v. Thompson, 51 Okla. 256, 151 Pac. 856, is one where the parties agreed in parol to submit a controversy to arbitration. It seems that under the common law an arbitration may be submitted by parol and the findings of the arbitrator may be in parol. The arbitrators made their findings, settled all matters in controversy in accordance with the submission, and the court held that the finding of the arbitrators was binding on the parties. In 2 Ruling Case Law 352, the author, in discussing arbitration, said:

"Arbitration as a method of settling disputes and controversies is recognized at common law. The award of the arbitrators is binding on the parties; but, in the absence of statute, the successful party can only enforce his rights thereunder by a suit at law. Thus the only gain by a common-law arbitration is the substitution of the definite

findings of the award as the basis of a suit, in the place of the former unsettled rights of the parties. In an action on the award, the award itself is conclusive evidence of all matters therein contained, provided the arbitrators have not exceeded the powers delegated to them by the agreement of submission. The courts regard matters submitted as concluded by the award, and in action thereon they will not review the merits of the arbitrators' findings."

But unless there is an arbitration and findings, it is not binding on the parties. and some of the cases hold that either party may withdraw from the arbitration at any time be ore the trial award. This being a common law state on the question of arbitration, we do not think that the clause in the contract relating to arbitration precludes the defendant from recovering on its cross-petition.

After a careful consideration of the questions raised on this appeal, and under the authoriites, we are constrained to hold with the contention of defendant.

The plaintiff has assigned as error the refusal of the court to give a number of instructions requested, and has excepted to two of the instructions given. Counsel say in their brief that requested instruction No. 1 outlines the issues under the pleading; that Nos. 2, 5, and 6 are formal. No. 3 directed that if the 20 tons of nuts were of quality specified in contract, the jury should find for plaintiff, and No. 4 that if the 20 tons were not of quality specified. plaintiff should recover nothing, and defendant would be entitled to recover on its counterclaim the difference between the contract price paid and the value of the nuts received This is the only discussion of the instructions requested, and from what we have already said these instructions were properly refused Counsel, in their brief, mention but two other requested instructions—one was in regard to the certificate of quality by the Chamber of Commerce at Seattle, which instruction tells the jury that such certificate was binding on the defendant in the absence of fraud or such gross error as to prevent fair decision as to the weights and Chamber of Commerce certificate of quality. The instruction then defines what gross error is. We think this instruction was properly refused because under our view of the law, the certificate furnished by the Chamber of Commerce of Seattle was not such certificate as contemplated by the contract. The certificate purporting to be from the Chamber of Commerce of Seattle shows on its face that it was not made by the Chamber of Commerce, but made by I. F. Laucks.

Inc., by, H. D. Hiems. All the Chamber of Commerce did was to certify that the above signature is the true signature of the above named I. F. Laucks. This is not a certificate by the Chamber of Commerce, but a certificate by Laucks, and we do not think it comes within the terms of the contract. **We think the instructions given by the court fairly presented the law of the case,** and that no harm was done plaintiff by the **refusal or the giving of the instructions.** An examination of the instructions requested shows to our mind that they were properly refused, and we do not think the two instructions given by the court and excepted to by the plaintiff are open to the objection urged in plaintiff's brief. Upon the whole case, we are of the opinion that substantial justice has been done, and that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.