**GOVERNMENT OF THE VIRGIN ISLANDS, DEPARTMENT OF EDUCATION, Appellant/Plaintiff**

**v.**

**ST. THOMAS/ST. JOHN EDUCATIONAL ADMINISTRATORS'**
**ASSOCIATION, LOCAL 101, o.b.o. LISA FORDE,**
**Appellee/Defendant**

S. Ct. Civil No. 2016-0105

Supreme Court of the Virgin Islands

July 20, 2017

MARIO M. BROWN, II, ESQ., ZULEYMA MARIE CHAPMAN, ESQ., Assistant Attorneys General — Labor, St. Thomas, USVI, *Attorneys for Appellant.*

PEDRO K. WILLIAMS, ESQ., Law Offices of Pedro K. Williams, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(July 20, 2017)

CABRET, *Associate Justice.* The Government of the Virgin Islands Department of Education (the "Government") appeals the Superior

625

Court's October 26, 2016 order, which confirmed an arbitration award that required the Government to pay attorney's fees to the St. Thomas/St. John Educational Administrators' Association ("EAA"). Because the Superior Court reached the correct result by confirming the arbitrator's award, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Government and the EAA are parties to a collective bargaining agreement (the "CBA") that was approved by the Governor of the Virgin Islands on July 25, 2008, and extended on a day-to-day basis by the parties on June 3, 2011. The CBA remains in force as of the date of this opinion.

Article V of the CBA contains a four-step grievance procedure, which ultimately provides for binding arbitration should the parties fail to resolve their differences. Section 12 of the CBA's grievance article states that, if the Government "fails or refuses to process a grievance and forces it to arbitration, the [Government] shall pay full cost if the grievance prevails." The CBA does not define the phrase "full cost."

The CBA provides that, for schools with up to 500 students, the Government shall assign one assistant principal; for schools with 501 to 800 students, the Government shall assign two assistant principals. When the 2011/2012 school year began, Gladys Abraham Elementary, a local elementary school, had enrolled 522 students. At the end of that school year, the number of enrolled students had dropped to 512. Despite the terms of the CBA, the Government only assigned one assistant principal to that elementary school during the 2011/2012 school year.

The sole assistant principal at the elementary school informed the superintendent on November 8, 2011, that the CBA obligated the Government to allocate two assistant principals to the school. On November 16, 2011, the assistant principal, through the EAA, filed a written grievance. The assistant principal's supervisor did not respond,[1] and because the assistant principal's supervisor was the superintendent, the CBA dictated that the matter proceed to arbitration.

On July 22, 2012, the EAA requested a list of arbitrators from the Public Employees Relations Board as required under step 4A of the

---

[1] The Government concedes this fact on appeal.

grievance procedure. The arbitrator held a hearing on July 9, 2013, and concluded that the Government had breached the CBA by failing to allocate a second assistant principal to the elementary school during the 2011/2012 school year. Noting that enrollment at the school had dropped below 501 students, the arbitrator concluded that he was powerless under the CBA to direct the Government to allocate a second assistant principal to the school. However, pursuant to its request, the arbitrator awarded attorney's fees to the EAA, reasoning that the CBA "specifically provides for an award of fees because the parties agreed by contract that the costs and fees could be awarded in section 12" of the grievance article.

On September 26, 2013, the Government filed an action in the Superior Court to vacate the arbitrator's award of attorney's fees, arguing that the arbitrator misinterpreted the CBA and applied the wrong set of arbitration rules. The matter came before the Superior Court for a hearing on December 17, 2014, during which the Superior Court disagreed with the arbitrator's justification for awarding fees, but nonetheless orally ruled that an award of attorney's fees was appropriate under the rules of the American Arbitration Association for "Employment Arbitration." The Superior Court reduced its oral order to writing by order entered October 26, 2016, and in that same order, permitted the EAA to seek attorney's fees incurred in defending against the Government's suit to vacate the arbitrator's award. The EAA moved for attorney's fees on November 3, 2016, and the Government filed a timely notice of appeal of the October 26, 2016 order confirming the arbitration award on December 27, 2016. V.I. R. APP. P. 5(a)(1).

## II. JURISDICTION

This Court has "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit 4, § 32(a). A final order disposes of all outstanding issues before the trial court. *Bashiti v. Tutu Park, Ltd.*, 66 V.I. 604, 607-608 (V.I. 2017) (citing *Ramirez v. People*, 56 V.I. 409, 416 (V.I. 2012)). The Superior Court's October 26, 2016 order confirming the arbitrator's award resolved all issues between the parties pertaining to the arbitrator's award. And although the EAA filed a motion for attorney's fees with the Superior Court, "[a] motion for attorney's fees shall not affect the running of the time for appeal." V.I. R. APP. P. 5(a)(4). We therefore have jurisdiction over this appeal. *Cf.*

*Tremcorp Holdings, Inc. v. Harris*, 65 V.I. 364, 367 (V.I. 2016) (the denial of a motion to vacate an arbitration award constitutes an appealable final judgment (citing *Gov't of the V.I. v. United Indus., Serv., Trans., Prof. and Gov't Workers of N. Am.-Seafarers Int'l Union of N. Am.*, 64 V.I. 312, 319-20 (V.I. 2016))).

## III. DISCUSSION

█ The Government appeals the Superior Court's October 26, 2016 order confirming the arbitrator's award of attorney's fees to the EAA under the CBA, arguing that the arbitrator erred in interpreting the terms of the CBA by permitting the EAA to recover attorney's fees under a provision of the CBA that required the Government to "pay full cost if the grievant prevails." When reviewing the Superior Court's decision to confirm an arbitration award, we exercise plenary review over the Superior Court's application of the law and review any findings of fact for clear error. *Allen v. HOVENSA, L.L.C.*, 59 V.I. 430, 436 (V.I. 2013) (citing *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)); *accord First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) (instructing that reviewing courts "should apply ordinary, not special, standards when reviewing [trial] court decisions upholding arbitration awards"); *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012) (when presented with "a . . . court's ruling on a motion to confirm or vacate an arbitration award, we review its legal conclusions de novo and its factual findings for clear error" (citations omitted)), *aff'd*, 569 U.S. 564, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013).

Except for the arbitrator's ruling pertaining to attorney's fees, the Government did not challenge the Superior Court's decision to enforce the remainder of the arbitration award, and does not purport to do so on appeal. We limit our review accordingly. *See* V.I. R. APP. P. 22(m) ("Issues that were . . . not raised or objected to before the Superior Court[,] . . . not briefed, [and are] unsupported by argument and citation to legal authority[ ] are deemed waived for purposes of appeal[.]").

In order to review the Superior Court's decision, we must first ascertain what deference, if any, the Superior Court was required to afford to the arbitrator's award. Only once we identify the appropriate level of deference may we determine whether the Superior Court complied.

## A. Scope of Superior Court Review

The Government argues that the Superior Court may only vacate an arbitration award for the reasons enumerated in section 10 of the Federal Arbitration Act[2] ("FAA"), and supports its argument with federal case law. The EAA likewise relies on case law applying the FAA to defend its position on appeal. Both parties assume that the FAA and related federal case law establish the scope of the Superior Court's review. The United States Court of Appeals for the Third Circuit has previously explained that "the provisions of the FAA and the standards developed by [Third Circuit] jurisprudence in reviewing arbitrations under the FAA are enforceable in the [Superior] Court" *Gov't of the V.I. v. United Indus. Workers, N.A.*, 169 F.3d 172, 173, 40 V.I. 489 (3d Cir. 1999). And decisions issued by the Third Circuit sitting as the de facto court of last resort for this jurisdiction represent binding authority on the Superior Court on subjects this Court has yet to address. *Najawicz v. People*, 58 V.I. 315, 328 (V.I. 2013) (citing *In re People of the V.I.*, 51 V.I. 374, 389 n.9 (V.I. 2009)), *cert. denied*, ___ U.S. ___, 134 S. Ct. 178, 187 L. Ed. 2d 43 (2013).

Those same decisions only represent persuasive authority to this Court, however, *see id.*, and we have not previously addressed the extent to which arbitration awards are subject to judicial review by the Superior Court. As we undertake to do so here, authority from the Supreme Court of the United States provides persuasive guidance. In *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987), the Supreme Court instructs that a trial court plays "only a limited role" when reviewing an arbitration award, in that trial courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract" because they "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Id.* at 36, 38. Once the parties have authorized the arbitrator to give meaning to the language of that agreement, "a [trial] court should not reject an award on the ground that the arbitrator misread the contract." *Id.* (citing *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960)). A contrary conclusion undermines the strong

---

[2] The Federal Arbitration Act is codified at 9 U.S.C. §§ 1-16.

federal policy favoring arbitration by permitting trial judges to substitute their opinion for those of the arbitrators. *See id.* at 36 ("The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." (citing *Enterprise Wheel & Car Corp.,* 363 U.S. at 596)); *accord United Industrial,* 64 V.I. at 326 (recognizing "the Supreme Court of the United States confirmed that in creating the [FAA], 'Congress' principal purpose [was] ensuring that private arbitration agreements are enforced according to their terms' " (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989))).

Section 10 of the FAA furthers this policy by delineating the specific grounds upon which a trial court may vacate an arbitration award.[3] 9 U.S.C. § 10(a); *see also Commonwealth Coatings Corp. v. Continental Cas. Co.,* 393 U.S. 145, 148, 89 S. Ct. 337, 21 L. Ed. 2d 301 (1968) (Section 10 of the FAA "show[s] a desire of Congress to provide not merely for any arbitration but for an impartial one"); *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,* 397 F.2d 594, 598 (3d Cir. 1968) (Section 10 of the FAA "was not intended to overthrow the general advantage of speedy and effective decision of disputes by arbitration and the creation of [the grounds stated in section 10] does not obliterate the hesitation with which courts should view efforts to re-examine awards." (citing *Karppinen v. Karl Kiefer Machine Co.,* 187 F.2d 32, 34-35 (2d Cir. 1951))). But although the FAA's substantive guarantees extend to proceedings in this jurisdiction, *see Allen,* 59 V.I. at

---

[3] Section 10(a) of the FAA provides:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration —
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

435 (citing *World Fresh Market v. P.D.C.M. Assocs., S.E.*, S. Ct. Civ. No. 2011-0051, 2011 V.I. Supreme LEXIS 29, at \*6 (V.I. Aug. 25, 2011) (unpublished)), we have questioned whether section 10 of the FAA represents such a guarantee. *See United Industrial*, 64 V.I. at 325-26. Accordingly, we must first consider whether section 10 preempts contrary local law. If it does not, we must determine what law governs the Superior Court's review of a binding arbitration award.

## 1. Applicability of Section 10

■ In *United Industrial*, we observed that "some courts have held that section 10 of the FAA is among the procedural provisions of the FAA that do not apply to state and territorial courts even if an action otherwise comes within the purview of the FAA." 64 V.I. at 325-26 (collecting cases). In the 2008 case of *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008), the Supreme Court of the United States concluded that the grounds for vacating or modifying an award set forth in sections 9 through 11 of the FAA are the exclusive bases for vacating or modifying awards under the FAA. 552 U.S. at 591. But the Court then proceeded to state, in dicta, that parties "may contemplate enforcement under state statutory or common law, . . . where judicial review of different scope is arguable." *Id.* at 590. This language suggests that, if parties are free to "contemplate enforcement [of arbitration awards] under state statutory or common law," then the provisions of section 10 do not preempt the grounds for vacating or modifying an arbitration award that exist under local law. Yet the Court was clear that it was only speaking to the scope of judicial review under the FAA's review provisions, and was "deciding nothing about other possible avenues for judicial enforcement of arbitration awards." *Id.* Nevertheless, the Supreme Court of California seized on this language and concluded that California law was not required to conform to the limitations contained in sections 9 through 11 of the FAA. *See Cable Connection, Inc. v. DIRECTV, Inc.*, 44 Cal. 4th 1334, 82 Cal. Rptr. 3d 229, 190 P.3d 586, 599 (2008) ("The [Supreme Court] unanimously left open other avenues for judicial review, including those provided by state statutory or common law. . . . While the court, of course, *decided* nothing about the viability of these alternatives, their mention in the majority opinion indicates that *Hall Street*'s holding on the effect of the FAA is a limited one." (emphasis in original)). Other jurisdictions have

631

followed suit. *See, e.g., Raymond James Fin. Servs. v. Honea,* 55 So. 3d 1161, 1168-69 (Ala. 2010) (interpreting *Hall Street,* treating section 10 of the FAA as "procedural as opposed to substantive law," and retreating from the position that Alabama courts may only apply section 10 when determining whether to vacate or modify an arbitration award); *Finn v. Ballentine Partners, LLC,* 169 N.H. 128, 143 A.3d 859, 867-68 (2016) (same, with respect to New Hampshire law); *Humitech Dev. Corp. v. Perlman,* 424 S.W.3d 782, 791 (Tex. App. 2014) (same, with respect to Texas law); *cf. Davies v. Waterstone Capital Mgmt.,* 856 N.W.2d 711, 715-16 (Minn. Ct. App. 2014) (concluding that "Minnesota courts may apply state law to motions to confirm or vacate arbitration awards" so long as doing so does not conflict with section 2 of the FAA), *cert. denied,* ___ U.S. ___, 136 S. Ct. 78, 193 L. Ed. 2d 32 (2015); *Trombetta v. Raymond James Fin. Servs.,* 2006 PA Super 229, 907 A.2d 550, 565 (Pa. Super. Ct. 2006) (concluding that section 10 of the FAA did not preempt the provision for vacating or modifying an award contained in Pennsylvania's arbitration act). Given the practices of other jurisdictions since *Hall Street* was decided, and in light of the fact that we have previously questioned its preemptive effect, *see United Industrial,* 64 V.I. at 325-26 (collecting cases), we elect to follow those jurisdictions that have concluded that section 10 of the FAA does not preempt local law in proceedings instituted in local courts. This does not mean that parties may not contract for the provisions in section 10 to govern the judicial review of an arbitrator's award. But "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Scis.,* 489 U.S. at 476. Since the agreement to arbitrate contained in the CBA does not explicitly contract for the procedures set forth in section 10 of the FAA, we must look elsewhere to discern the scope of the Superior Court's review.

## 2. Defining the Local Law

■ Since section 10 does not preempt local law and the parties did not contract for section 10 to apply, it does not matter whether the CBA has a sufficient interstate nexus to trigger application of the FAA because we must apply local law to determine the circumstances under which the Superior Court may vacate or modify an arbitration award in either case. And, because arbitration in the Virgin Islands is not governed by statute,

we must turn to the common law to ascertain the extent to which the Superior Court may review a binding arbitration award. To accomplish this task, our precedent in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011), compels us to weigh past approaches taken by courts in this jurisdiction and the approach taken by a majority of jurisdictions in the United States — along with any competing approaches — to determine the soundest rule of law for this jurisdiction. *See Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (V.I. 2014) (citing *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014)).

Courts in this jurisdiction evidence a history of deference to an arbitrator's decision. In *United Industrial*, we assumed without deciding that the deferential standard of review codified under section 10 of the FAA applied for purposes of demonstrating that the arbitrator's actions could not survive an extremely deferential standard of review. 64 V.I. at 331. Some opinions from this jurisdiction continue to apply section 10 of the FAA pursuant to language contained in an older opinion issued by the Third Circuit. *See United Indus. Workers, N.A.*, 169 F.3d at 173 (stating that "the provisions of the FAA and the standards developed by [Third Circuit] jurisprudence in reviewing arbitrations under the FAA are enforceable in the [Superior] Court"); *see, e.g., Mustafa v. Amore St. John, LLC*, 58 V.I. 74, 78-79 (V.I. Super. Ct. 2013) (concluding that section 10(a) of the FAA was "clearly applicable to the Virgin Islands" without considering whether section 10 preempted local law); *Thompson v. World Fresh Market, LLC*, Civil No. ST-08-CV-512, 2011 V.I. LEXIS 39 (V.I. Super. Ct. July 15, 2011) (same). Other opinions from this jurisdiction evince similar deference to the arbitrator's decision, albeit without explicit reliance on the FAA. *See, e.g., Gov't of the V.I. v. St. Thomas/St. John Educ. Admin'rs Ass'n*, 25 V.I. 71, 75-76 (V.I. Super. Ct. 1990) ("[I]t is well settled that the scope of review of an arbitration award is limited to a determination of whether the arbitrator has exceeded his authority, or whether he has failed to perform his contractual duty or whether the arbitrator's award is arbitrary and capricious." (collecting cases)).

Outside of the Virgin Islands, most jurisdictions have adopted statutes addressing review of arbitration awards. But "[b]ecause the Virgin Islands Legislature has not adopted such a statute, we address this issue solely as one of common law and exclude cases relying on state statutes from our review of authorities." *See Malloy v. Reyes*, 61 V.I. 163, 177 n.11 (V.I.

2014) (citing *Better Bldg. Maint. of the V.I.*, 60 V.I. at 757). However, a clear majority of jurisdictions recognize the availability of common law arbitration, and only permit review of a binding arbitration award under limited circumstances.[4] Yet not all states permit arbitration as a matter of common law, *see, e.g., Palmer Steel Structures v. Westech, Inc.*, 178 Mont. 347, 584 P.2d 152, 154 (1978) (rejecting as unenforceable a common law agreement for arbitration), and others limit the review of arbitration awards to statutory grounds, *see, e.g., Warbington Const., Inc. v. Franklin Landmark, L.L.C.*, 66 S.W.3d 853, 859 (Tenn. Ct. App. 2001) ("[W]e decline to adopt the nonstatutory grounds of 'manifest disregard' and public policy for reviewing arbitration awards.").

Early case law from the Supreme Court of the United States foreshadowed the general consistency that would come to characterize

---

[4] *See, e.g., Byrd v. Odem*, 9 Ala. 755, 766 (1846); *Doe v. Cent. Arkansas Transit*, 50 Ark. App. 132, 900 S.W.2d 582, 584 (1995); *Wilson v. Wilson*, 18 Colo. 615, 34 P. 175, 178 (1893); *Hall v. Norwalk Fire Ins. Co.*, 57 Conn. 105, 17 A. 356, 360 (1888); *Dudziak v. Dudziak*, No. C.A. 4709, 1975 Del. Ch. LEXIS 228 (Del. Ch. Aug. 8, 1975) (unreported); *Cathedral Ave. Coop. v. Carter*, 947 A.2d 1143, 1151 (D.C. 2008), *as amended* (June 16, 2008); *Nat'l Hotel v. Koretzky*, 96 So. 2d 774, 775 (Fla. 1957); *Hardin v. Brown*, 27 Ga. 314, 314 (1859); *Water Pipe Ext. & Bureau of Eng'g Laborers' Local 1092 v. City of Chicago*, 318 Ill. App. 3d 628, 741 N.E.2d 1093, 1099-1100, 251 Ill. Dec. 915 (2000); *Goodwine v. Miller*, 32 Ind. 419, 421-22 (1869); *Reicks v. Farmers Commodities Corp.*, 474 N.W.2d 809, 811-12 (Iowa 1991); *Weems v. Buildex, Inc.*, 8 Kan. App. 2d 321, 657 P.2d 72, 78 (1983); *Miller v. Plumbers Supply Co.*, 275 Ky. 647, 122 S.W.2d 477, 481 (1938); *Porter v. Buckfield Branch R.R.*, 32 Me. 539, 551 (1851); *Bd. of Educ. of Prince George's Cnty. v. Prince George's Cnty. Educators' Ass'n*, 309 Md. 85, 522 A.2d 931, 938 (1987); *Strong v. Strong*, 63 Mass. 560, 560-61, 9 Cush. 560 (1852); *City of Ferndale v. Florence Cement Co.*, 269 Mich. App. 452, 712 N.W.2d 522, 527 (2006); *Park Const. Co. v. Indep. Sch. Dist. No. 32, Carver Cnty.*, 216 Minn. 27, 11 N.W.2d 649, 653 (1943); *Estate of Sandefur v. Greenway*, 898 S.W.2d 667, 670 (Mo. Ct. App. 1995); *Babb v. United Food & Commercial Workers Dist. Union, Local 271*, 233 Neb. 826, 448 N.W.2d 168, 172 (1989); *Steel v. Steel*, 1 Nev. 27, 32 (1865); *Thrasher v. Haynes*, 2 N.H. 429, 429-30 (1822); *Carpenter v. Bloomer*, 54 N.J. Super. 157, 148 A.2d 497, 503 (1959); *McKibben v. Grigg*, 1998 ND App. 5, 582 N.W.2d 669, 671 (1998); *Warner v. CTL Eng'g*, 9 Ohio App. 3d 52, 9 Ohio B. 70, 458 N.E.2d 399, 402 (1983); *Kuhara Trading Co. v. Russell Jobbers Mills*, 1924 OK 954, 103 Okla. 298, 230 P. 242, 243-44 (1924); *Rueda v. Union Pac. R.R. Co.*, 180 Ore. 133, 175 P.2d 778, 788 (1946); *Runewicz v. Keystone Ins. Co.*, 476 Pa. 456, 383 A.2d 189, 191-92 (1978); *Bradford Dyeing Ass'n v. J. Stog Tech GmbH*, 765 A.2d 1226, 1232 n.8 (R.I. 2001); *L. H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348, 351-52 (Tex. 1977); *Shermer v. Beale*, 1 Va. 11, 13, 1 Wash. 11 (1791); *Clark Cty. Pub. Util. Dist. No. 1 v. Int'l Bhd. of Elec. Workers*, 150 Wn.2d 237, 76 P.3d 248, 253 & n.6 (2003); *Billmyer v. Hamburg-Bremen Fire Ins. Co.*, 57 W. Va. 42, 49 S.E. 901, 903 (1905); *Joint Sch. Dist. No. 10, City of Jefferson v. Jefferson Ed. Ass'n*, 78 Wis. 2d 94, 253 N.W.2d 536, 547 (1977); *Riverton Val. Elec. Ass'n v. Pac. Power & Light Co.*, 391 P.2d 489, 496 (Wyo. 1964).

judicial review of arbitration awards in jurisdictions where arbitration was permissible at common law. In *Burchell v. Marsh*, 58 U.S. (17 How.) 344, 15 L. Ed. 96 (1854), the Supreme Court observed that if

> the [arbitration] award is within the submission [to the arbitrator], and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error, either in law or fact. A contrary course would be a substitution of the judgment of the chancellor in place of the judges chosen by the parties . . . . In order . . . to induce the court to interfere, there must be something more than an error of judgment, such as corruption in the arbitrator, or gross mistake, either apparent on the face of the award, or to be made out by evidence, but in case of mistake, it must be made out to the satisfaction of the arbitrator, and that if it had not happened, he should have made a different award.

58 U.S. at 349-50. Consistent with this language, fraud, corruption or partiality on behalf of the arbitrator, or malfeasance by the parties justifies vacating an arbitration award at common law. *See, e.g., Liggett v. Torrington Building Co.*, 114 Conn. 425, 158 A. 917, 919 (1932) ("Prior to the arbitration statute of 1929, it is well settled under our decisions that an award of arbitrators could be set aside only for partiality and corruption of the arbitrators, mistakes in their own principles, or fraud or misbehavior of the parties." (citations omitted)); *Craft v. Thompson*, 51 N.H. 536, 543-44 (1872) ("The class of cases in which the court will set aside an award, upon matter not arising out of the submission or award, is where there is some corruption, partiality, or misconduct on the part of the arbitrators, or some fraud or imposition on the part of the party attempting to set up the award, by means of which the arbitrators were deceived or misled." (citation and internal quotation marks omitted)).[5] Another commonly recognized justification for vacating an award is that the arbitrator acted in excess of his authority. *See, e.g., Kuhara Trading Co. v. Russell Jobbers Mills*, 1924 OK 954, 103 Okla. 298,

---

[5] *Accord Doe*, 900 S.W.2d at 584; *Wilson*, 34 P. at 178; *Hardin*, 27 Ga. at 314; *Water Pipe Ext. & Bureau of Eng'g Laborers' Local 1092*, 741 N.E.2d at 1099-1100; *Carrs Fork Corp.*, 809 S.W.2d at 702; *Tyler*, 13 Me. at 47; *Bd. of Educ. of Prince George's Cnty*, 522 A.2d at 938; *Strong*, 63 Mass. at 560-61; *Park Const. Co.*, 11 N.W.2d at 653; *Babb*, 448 N.W.2d at 172, *Runewicz*, 383 A.2d at 191-92; *Jefferson Ed. Ass'n*, 253 N.W.2d at 547, *Riverton Val. Elec. Ass'n*, 391 P.2d at 496.

230 P. 242, 243-44 (1924) ("[T]he award itself is conclusive evidence of all matters therein contained, provided the arbitrators have not exceeded the powers delegated to them by the agreement of submission. The courts regard matters submitted as concluded by the award, and in action thereon they will not review the merits of the arbitrators' findings.").[6]

Other justifications appear with less consistency. For example, some jurisdictions permit a court to vacate an arbitration award where the arbitrator manifestly disregards the law. *See, e.g., Clark Cty. Educ. Ass'n v. Clark Cty. Sch. Dist.*, 122 Nev. 337, 131 P.3d 5, 7 (2006) ("We have previously recognized that a private arbitration award may be reviewed [when] the arbitrator manifestly disregarded the law."); *Bradford Dyeing Ass'n, Inc. v. J. Stog Tech GmbH*, 765 A.2d 1226, 1232 n.8 (R.I. 2001) ("At common law an arbitration award could be vacated when a mistake in the law appears on the face of the award." (citation and internal quotation marks omitted)). Other jurisdictions have concluded that a mistaken application of the law does not justify setting aside an arbitration award. *See, e.g., Byrd v. Odem*, 9 Ala. 755, 766 (1846) ("A misjudgment of arbitrators, (although it may be a misapprehension of law,) on a case fairly before them, is not alone sufficient cause for setting aside an award."); *Goodwine v. Miller*, 32 Ind. 419, 421-22 (1869) ("[I]f judges chosen by the parties erroneously decide a question of law, the court will abide the decision." (citation and internal quotation marks omitted)); accord *Dudziak v. Dudziak*, No. C.A. 4709, 1975 Del. Ch. LEXIS 228 (Del. Ch. Aug. 8, 1975); *Clark Cty. Pub. Util. Dist. No. 1 v. Int'l Bhd. of Elec. Workers*, 150 Wn.2d 237, 76 P.3d 248, 253 & n.6 (2003). Still other jurisdictions do not permit vacatur based on a mistaken application of the law unless the arbitrator was supposed to correctly apply the law. *See, e.g., Carpenter v. Bloomer*, 54 N.J. Super. 157, 148 A.2d 497, 503 (1959) ("Apart from misconduct of the arbitrator . . . grounds for setting aside an award are limited, in the case of alleged mistakes of fact, to those apparent on the face of the award or admitted by the arbitrator and, as to claimed errors of law, to situations where the arbitrator meant to decide according to law and clearly had mistaken the

---

[6] *Accord Doe*, 900 S.W.2d at 584; *Dudziak*, 4709, 1975 Del. Ch. LEXIS 228; *Weems*, 657 P.2d at 78; *Tyler*, 13 Me. at 47; *Strong*, 63 Mass. at 560-61; *Estate of Sandefur*, 898 S.W.2d at 670; *City of Ferndale*, 712 N.W.2d at 527; *Jefferson Ed. Ass'n*, 253 N.W.2d at 547.

legal rule which appears on the face of the award or by the statement of the arbitrator."); *Rueda v. Union Pac. R.R. Co.*, 180 Ore. 133, 175 P.2d 778, 788 (1946) ("The court will enter judgment upon [an arbitration award], but not if . . . it appears that the arbitrators intended to follow the law and then based the award on a clear misapprehension concerning the law." (citation omitted)).

Another justification that appears with some frequency is mistake, but this justification does not refer to a simple mistake of fact or law. *See Burchell*, 58 U.S. at 350 ("Courts should be careful to avoid a wrong use of the word 'mistake,' and, by making it synonymous with a mere error of judgment, assume to themselves an arbitrary power over awards."); *Wilson v. Wilson*, 18 Colo. 615, 34 P. 175, 178 (1893) ("[S]ome accident or mistake must be shown by which [the arbitrators] were deceived and misled."); *Head v. Muir*, 24 Va. 122, 132 (1824) ("But the mistakes, here meant, do not comprehend errors of judgment . . . upon a subject. . . . There must be something more, . . . and in the case of mistake, it must be made out to the satisfaction of the arbitrator. . . . The only grounds [for setting aside an award] are . . . [t]hat [the arbitrator] proceeded upon a mere mistake, which they themselves admit." (citations and internal quotation marks omitted)); *Riverton Val. Elec. Ass'n v. Pac. Power & Light Co.*, 391 P.2d 489, 496 (Wyo. 1964) ("At common law, an award of arbitrators can be set aside, in the absence of an agreement not to appeal . . . [for] palpable mistake of facts as to satisfy the court that, if it had not been made, the decision of the arbitrators, *according to their manifest intent*, would have been different." (citation and internal quotation marks omitted)).[7]

But common law standards of review can vary widely; some standards grant nearly unlimited discretion to the arbitrator, while others permit courts to substitute their understanding of public policy for an arbitrator's decision. *Compare Reicks v. Farmers Commodities Corp.*, 474 N.W.2d 809, 811-12 (Iowa 1991) ("When acting within the scope of their authority, being the chosen judges of the parties and the law unto

---

[7] For other authorities recognizing "mistake" as a justification for vacating an arbitration award, *see Doe*, 900 S.W.2d at 584; *Wilson*, 34 P. at 178; *Liggett*, 158 A. at 919; *Hardin*, 27 Ga. at 314; *Water Pipe Ext. & Bureau of Eng'g Laborers' Local 1092*, 741 N.E.2d at 1099-1100; *Strong*, 63 Mass. at 560-61; *City of Ferndale*, 712 N.W.2d at 527; *Park Const. Co.*, 11 N.W.2d at 653; *Babb*, 448 N.W.2d at 172; *Warner*, 458 N.E.2d at 402; *Rueda*, 175 P.2d at 788; *Jefferson Ed. Ass'n*, 253 N.W.2d at 547.

themselves, [arbitrators] may award according to their notions of justice and without assigning any reason." (citation omitted)), *with City of Ferndale v. Florence Cement Co.*, 269 Mich. App. 452, 712 N.W.2d 522, 527 (2006) ("[A]n award will be upheld absent . . . [a] violation of public policy[.]").

■ Mindful of the authorities discussed in the preceding paragraphs, we anchor our search for the soundest rule of law for the Virgin Islands to the principles that arbitration is a matter of contract, *see Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)), and that courts should strive to most appropriately implement the intent of the parties. *See First Options of Chicago, Inc.*, 514 U.S. at 947 ("[T]he basic objective in this area is . . . to ensure that . . . arbitration agreements, like other contracts, are enforced according to their terms and according to the intentions of the parties." (citations and internal quotation marks omitted)). Given these premises, there can be little doubt that common law arbitration is permissible in the Virgin Islands, as a contrary conclusion would eviscerate parties' ability to bargain for arbitration in contracts over which Congress's Commerce Clause power does not extend. It also follows from these premises that the only common law bases for judicial review of a binding arbitration award can be those that facilitate — or at least do not impede — the intent of the parties. As the best indication of the parties' intent, the language of the contract itself defines the scope of an arbitrator's authority. *See Water Pipe Ext. & Bureau of Eng'g Laborers' Local 1092 v. City of Chicago*, 318 Ill. App. 3d 628, 741 N.E.2d 1093, 1099-100, 251 Ill. Dec. 915 (2000) ("Under the common law standard[,] a court is duty bound to enforce a labor-arbitration award if the arbitrator acts within the scope of his or her authority and the award draws its essence from the parties' collective-bargaining agreement." (citation and internal quotation marks omitted)). So any award that exceeds the scope of the authority conferred by the contract must be subject to judicial impeachment because it does not reflect the parties' bargain. Awards procured by fraud, partiality, or some malfeasance on behalf of the parties or the arbitrator — or awards predicated upon a mistake flowing from such actions — may be vacated for the same reason.

■■■ But, by consenting to binding arbitration, parties relinquish the legal and procedural safeguards that accompany judicial proceedings. *See Doe*, 900 S.W.2d at 584 ("If the parties wanted exact justice administered according to the forms of law, they should have allowed their case to take the usual course. But for reasons satisfactory to themselves, they have chosen to substitute for the courts of law a private forum, and there is no injustice in holding them bound by the result." (citation omitted)); *Yale & Towne Mfg. Co. v. Int'l Ass'n of Machinists*, 15 Conn. Supp. 118, 119 (Conn. Super. Ct. 1947) ("At common law the arbitration is distinctly the private concern of the parties to it in which the courts have no interest."). As explained by the Supreme Court of Iowa:

> A refined quality of justice is not the goal in arbitration matters. Indeed such a goal is deliberately sacrificed in favor of a sure and speedy resolution. Under our common-law view the purpose of arbitration is to end disputes without court participation. It is no idle coincidence that the words "arbitration" and "arbitrary" are both derived from the same Latin word.

*Reicks*, 474 N.W.2d at 811 (citing Webster's New International Dictionary 110 (3d ed. 1964)). Consequently, unless otherwise bargained for,[8] a mistaken application of the law does not expose an award to judicial review. *See Goodwine v. Miller*, 32 Ind. 419, 421-22 (1869) ("[I]f judges chosen by the parties erroneously decide a question of law, the court will abide the decision." (citation and internal quotation marks omitted)). Similarly, so long as an award derives from the legitimate exercise of an arbitrator's power, a court may not alter an award based on its own notions of justice or sound public policy, as doing so evidences a judicial disregard for the parties' chosen form of dispute resolution. *Cf. Antilles Sch., Inc. v. Lembach*, 64 V.I. 400, 433-39 (V.I. 2016) (rejecting the doctrine of remittitur, and recognizing that the Virgin Islands is likely bound by precedent from the Supreme Court of the United States holding additur unconstitutional under the Seventh Amendment). Consequently, in order to ensure that parties who bargain for binding arbitration receive the benefit of their bargain, we conclude that the Superior Court may only vacate an arbitrator's award if: (1) the arbitrator

---

[8] For example, a clause indicating that an arbitration "shall proceed in accordance with the laws of the U.S. Virgin Islands" would signal that the parties intended for the arbitrator to apply those laws, and not others.

exceeded his or her authority in rendering the award (which may include ignoring limits in the arbitration agreement itself on issues to be arbitrated or remedies the parties agreed to make available); (2) if the award was the product of fraud, partiality, or malfeasance on behalf of the parties or the arbitrator — or if the award was predicated upon a mistake flowing from such conduct; or (3) if the arbitrator manifestly disregards the law.

## B. Application

The arbitrator determined that an award of attorney's fees was appropriate, reasoning that "the [CBA] specifically provides for an award of fees because the parties agreed by contract that the costs and fees could be awarded in section 12 of the Article V on page 19 [of the CBA]." This reasoning illustrates that the arbitrator interpreted the term "full cost" as used in section 12 of grievance article to include attorney's fees, despite the fact that the CBA does not define the term "full cost."

 The Superior Court rejected the arbitrator's interpretation of the CBA, observing that "the term 'cost' as used in [the CBA] is a term of art that does not expressly incorporate or impliedly incorporate necessarily attorney's fees." The Superior Court then proceeded to interpose its own interpretation of the CBA, first observing that the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures[9] permitted an award of attorney's fees, and then construing sections 11 and 12 of the CBA's grievance article to deduce that the parties clearly contemplated the use of attorneys during arbitration. The Superior Court concluded that each premise was sufficient to support the conclusion that the CBA authorized the arbitrator to award attorney's fees. But in reaching this conclusion, the Superior Court did not justify its disregard of the arbitrator's interpretation under any of the common law bases enumerated above.[10,11] Because the Superior Court did not establish an

---

[9] The Superior Court erred in applying these rules because the CBA indicates that "arbitration shall be conducted in accordance with the Labor Arbitration Rules of the American Arbitration Association," not the Employment Arbitration Rules referenced by the Superior Court. The Labor Arbitration Rules do not contain a rule that addresses attorneys' fees, but Labor Arbitration Rule 44 grants an arbitrator discretion to assess expenses against parties, and by extension, grants the arbitrator authority to determine whether attorney's fees will be included in the assessed expenses.

[10] Since the CBA did not define the term "full cost," the dispute over whether this term includes attorney's fees evidences that the term is subject to multiple reasonable interpre-

appropriate justification for disregarding the arbitrator's interpretation of the CBA, it erred in relying on its own interpretation of the CBA to confirm the arbitrator's award. It should have simply deferred to the arbitrator's reasoning.

 The Government attempts to argue that the arbitrator exceeded the scope of his authority by allegedly "alter[ing] the express provisions of the CBA."[12] To make this argument, the Government relies on its subjective interpretation of certain CBA provisions that purportedly illustrate that the phrase "full cost" cannot be read to include attorney's fees. But in making this argument, the Government makes the same mistake as the Superior Court, substituting its interpretation of the CBA for the arbitrator's interpretation. The fact that a party — or even a reviewing court — merely disagrees with how an arbitrator interprets a contract is not sufficient grounds to vacate the arbitrator's decision. And although the Government did not proffer "manifest disregard" as a reason for reversing the arbitrator's fee award, we note that an arbitrator's interpretation of an undefined term does not constitute a manifest disregard of the CBA's contractual provisions, or of the applicable law. Because the Government's only argument does not fall under any of the common law justifications for vacating an arbitration award adopted above, we perceive no basis for vacating the arbitrator's award in this instance. So, although the Superior Court erred in its methodology, it

---

tations, rendering it ambiguous. *See Thomas v. V.I. Bd. of Land Use Appeals*, 60 V.I. 579, 595 (V.I. 2014) (contractual language that is subject to more than one reasonable interpretation is ambiguous). When contractual terms are ambiguous, their meaning becomes a question of fact. *United Corp. v. Tutu Park, Ltd.*, 55 V.I. 702, 707 (V.I. 2011). By determining that the term "full cost" included attorney's fees, the arbitrator made a finding of fact. And as we recognized above, "[t]he doctrine of common law arbitration states that the arbitrator is the final judge of . . . the facts." *Clark Cty. Pub. Util. Dist. No. 1*, 76 P.3d at 253.

[11] Nor did the Superior Court anchor its deviation from the arbitrator's interpretation to one of the four bases enumerated in section 10(a) of the FAA. Prior to today's holding, the Third Circuit's decision in *United Indus. Workers, N.A.* obligated such an analysis. *See* 169 F.3d at 173; *Najawicz*, 58 V.I. at 328 (citing *In re People of the V.I.*, 51 V.I. at 389 n.9).

[12] The Government also argues that the Superior Court erred in applying the Employment Arbitration Rules instead of the Labor Arbitration Rules. We agree. *See* footnote 9, *supra*. But since the Superior Court erroneously invoked those rules — due to the fact that it had not established a sufficient justification for departing from the arbitrator's interpretation of the CBA — its error has no bearing on the outcome of this case. Further, as explained in footnote 9 above, the Government would not prevail even if we applied the very rules for which they advocate.

nonetheless reached the correct result by confirming the arbitrator's award.

## IV. CONCLUSION

██ Because section 10 of the FAA does not preempt local law, the common law of arbitration governs the extent to which the Superior Court was able to review the arbitrator's fee award. Under the common law, the Superior Court may only vacate an arbitrator's award if: (1) the arbitrator exceeded his or her authority in rendering the award (which may include ignoring limits in the arbitration agreement itself on issues to be arbitrated or remedies the parties agreed to make available); (2) if the award was the product of fraud, partiality, or malfeasance on behalf of the parties or the arbitrator — or if the award was predicated upon a mistake flowing from such conduct; or (3) the arbitrator manifestly disregards the law. Because no such justification exists in this case, the Superior Court erred when it rejected the arbitrator's interpretation of the CBA. But since the Superior Court nevertheless confirmed the arbitrator's award, we nevertheless affirm the Superior Court's October 26, 2016 order upholding the arbitrator's fee award, albeit for reasons different than those stated by the Superior Court. *See Antilles School, Inc*, 64 V.I. at 438 n.23 ("It is well established that, under the 'right result, wrong reason' doctrine, where the record otherwise supports the trial court's judgment, an appellate court may affirm that judgment for reasons other than those relied upon by the trial court, even if the trial court's reasons are erroneous.").